254 F.3d 250 (D.C. Cir. 2001)
 Public Utilities Commission of the State of California, Petitioner
v.
Federal Energy Regulatory Commission, Respondent
Pacific Gas and Electric Company, et al., Intervenors
 No. 00-1203
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued May 7, 2001
Decided July 6, 2001
 
 On Petition for Review of Orders of the Federal Energy Regulatory Commission
 Sean H. Gallagher argued the cause for petitioner. With him on the briefs was Arocles Aguilar.
 Lona T. Perry, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was Dennis Lane, Solicitor.
 Edward Berlin, Kenneth G. Jaffe, Robert V. Zener, Michael E. Ward, Robert C. McDiarmid, Lida G. Dowden and Andrea G. Lonian were on the brief for intervenors Northern California Power Agency and California Independent System Operator Corporation. Daniel I. Davidson entered an appearance.
 Before: Williams, Ginsburg and Rogers, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Rogers.
 Rogers, Circuit Judge:
 
 
 1
 The Public Utilities Commission of the State of California ("CALPUC") seeks review of orders by the Federal Energy Regulatory Commission allowing the California Independent System Operator ("ISO") to enter into "Reliability Must-Run" ("RMR") contracts with generators owned by entities not subject to the Commission's rate jurisdiction, and to pass through the costs of such contracts in the ISO's rates without filing under 205 of the Federal Power Act ("FPA"). See 16 U.S.C. 824d (1994). Because it considered the ISO's tariff to be satisfactory as a formula rate, the Commission rejected the argument that a 205 filing was required. CALPUC contends that the ISO tariff does not meet the Commission's standards for formula rates, and alternatively, that even if it is a valid formula rate, 205 requires re-filing when the formula is changed, which CALPUC maintains occurs when the ISO adds a new component by entering a new RMR contract. Additionally, CALPUC maintains that the Commission's reliance on 206 of the FPA, 16 U.S.C. 824e (1994), is misplaced because the availability of review under 206 does not abrogate the 205 filing requirement. We hold that the Commission could properly determine that although the RMR contracts are components of the formula rate or affect the ultimate rates charged pursuant to the formula, 205 filing was not required and 206 affords an adequate statutory remedy. Accordingly, we deny the petition.
 
 I.
 
 2
 The State of California has restructured its electric supply operations, as implemented in large part by Commission decisions, so that the ISO now operates portions of the transmission systems of three California investor-owned utilities, referred to as Responsible Utilities: Pacific Gas & Electric Company, Southern California Edison Company ("SoCal Edison"), and San Diego Gas & Electric Company. See Pac. Gas & Elec. Co., 91 F.E.R.C. p 63,008, at 65,102 (2000) ("Southern"). In providing transmission services, the ISO is required to maintain transmission system reliability. See Pac. Gas & Elec. Co., 81 F.E.R.C. p 61,322, at 62,486 (1997). The ISO accomplishes this in part by use of RMR contracts to ensure ancillary services, voltage support, and energy to support the reliability of the ISO-controlled grid.[1] See Southern, 91 F.E.R.C. at 65,103. Under the RMR structure approved by the Commission, see Cal. Indep. Sys. Operator Corp., 87 F.E.R.C. p 61,229 (1999); Cal. Indep. Sys. Operator Corp., 87 F.E.R.C. p 61,250 (1999); see generally Pac. Gas & Elec. Co., 81 F.E.R.C. p 61,122, at 61,554-58 (1997), the cost responsibility for the RMR contracts is reflected in 5.2.8 of the ISO tariff.[2] Pursuant to its tariff, the ISO passes through to the Responsible Utilities the costs of RMR contracts in each utility's service area. See supra n.2; see also Southern, 91 F.E.R.C. at 65,102-03. CALPUC's concern arises because the costs are then passed along by the utilities to California retail ratepayers.
 
 
 3
 Insofar as CALPUC is concerned, the problem arose after the Commission approved Amendment 22 to the ISO tariff. The ISO requested the amendment, in September 1999, in order to enhance its ability to support reliability of the ISO- controlled grid. Relevant here is the provision allowing the ISO to enter into RMR contracts with generating units that are outside the service area of any Responsible Utility and that make no jurisdictional sales of power. See FPA 201. The Commission conditionally approved Amendment 22 on November 24, 1999. Cal. Indep. Sys. Operator Corp., 89 F.E.R.C. p 61,229, at 61,680 (1999). The Commission declined to require that the ISO make a 205 filing every time it seeks to pass through RMR contract costs involving a non- jurisdictional entity. See id. at 61,683-84. Responding to concerns expressed by CALPUC and SoCal Edison, the Commission noted, however, that the ISO's proposal did not explain how the ISO would allocate RMR costs between Responsible Utilities if more than one was contiguous with an RMR unit. Id. at 61,684. The Commission stated: "As the ISO is, in effect, proposing a formula rate, this lack of specificity is unacceptable." Id. The Commission therefore required the ISO to make a separate filing under 205 whenever it sought to allocate RMR costs where more than one Responsible Utility was contiguous to an RMR unit, and to revise its tariff accordingly. Id.
 
 
 4
 CALPUC (and others) sought rehearing regarding, as relevant here, the necessity of 205 filings for RMR contracts with non-jurisdictional entities. CALPUC asserted that "[i]n the absence of such a requirement California ratepayers will be subject to paying RMR contract costs which have been negotiated by the ISO without any public, consumer, or ratepayer input, and with no regulatory review." CALPUC argued that the charging of RMR costs to a Responsible Utility by the ISO was a jurisdictional sale under 205 and, therefore, the Commission was obligated to ensure that such charges were just and reasonable. The Commission denied rehearing, responding:
 
 
 5
 The recovery of RMR costs under the ISO's tariff is through a formula rate. The ISO purchases RMR services under the contracts and passes through the costs to Responsible Utilities under the formula rate. The filed rate in this circumstance is the formula. SoCal Edison, [CALPUC], and others may challenge the costs recovered under this formula by filing a complaint under FPA Section 206, and such challenges to costs recovered under a formula rate are not limited to prospective relief. Accordingly, we see no purpose to also requiring the filing under FPA Section 205 of each contract the ISO enters into with a non-jurisdictional entity.
 
 
 6
 Cal. Indep. Sys. Operator Corp., 90 F.E.R.C. p 61,315, at 62,042 (2000) (footnote omitted).
 
 II.
 
 7
 On appeal, CALPUC contends that the Commission has violated both the FPA and its obligation to engage in reasoned decision making. Essentially, CALPUC maintains that 205 filing of the non-jurisdictional RMR contracts is required because RMR contract costs significantly affect the ISO's 5.2.8 RMR rate, and thus must be filed under FPA 205(c) and (d). The court reviews the Commission's orders under the Administrative Procedure Act's arbitrary and capricious standard. See Sithe/Independence Power Partners, L.P. v. FERC, 165 F.3d 944, 948 (D.C. Cir. 1999); 5 U.S.C. 706(2)(A) (1994). "Because '[i]ssues of rate design are fairly technical and, insofar as they are not technical, involve policy judgments that lie at the core of the regulatory mission,' our review of whether a particular rate design is 'just and reasonable' is highly deferential." Id. (quoting Town of Norwood v. FERC, 962 F.2d 20, 22 (D.C. Cir. 1992)). Thus, for CALPUC to prevail, the court must be able to conclude that the Commission was required to review the RMR contracts with non-jurisdictional entities pursuant to 205 before allowing the pass through of RMR costs and could not rely on possible investigation, review, and refund proceedings under 206. Cf. La. Pub. Serv. Comm'n v. FERC, 174 F.3d 218, 231 (D.C. Cir. 1999).
 
 
 8
 It can hardly be doubted at this late date that the Commission "need not confine rates to specific, absolute numbers but may approve a tariff containing a rate 'formula' or a rate 'rule'...." Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 578 (D.C. Cir. 1990). The Commission has been accepting formula rates since the early 1970s. See Me. Yankee Atomic Power Co., 42 F.E.R.C. p 61,307, at 61,923 (1988). As defined by the Commission, a formula rate specifies the cost components that form the basis of the rates a utility charges its customers. Hampshire Gas Co., 6 F.E.R.C. p 61,249, at 61,607 (1979). The Commission's acceptance of formula rates is premised on the rate design's "fixed, predictable nature," Ocean State Power II, 69 F.E.R.C. p 61,146, at 61,552 (1994), which both allows a utility to recover costs that may fluctuate over time and prevents a utility from utilizing excessive discretion in determining the ultimate amounts charged to customers. See id. Thus, " '[w]hen the Commission accepts a formula rate as a filed rate, it grants waiver of the filing and notice requirements of [§ 205] [, and] [t]he utility's rates, then, can change repeatedly, without notice to the Commission, provided those changes are consistent with the formula.' " Ala. Power Co. v. FERC, 993 F.2d 1557, 1567-68 (D.C. Cir. 1993) (quoting San Diego Gas & Elec. Co., 46 F.E.R.C. p 61,363, at 62,129-30 (1989)). As further explained, because "the formula itself is the rate, not the particular components of the formula, ... periodic adjustments made in accordance with the Commission-approved formula do not constitute changes in the rate itself and accordingly do not require [s] 205 filings." Ocean State Power II, 69 F.E.R.C. at 61,544-45 (footnote omitted).[3]
 
 
 9
 The Commission has required 205 filings, as CALPUC points out, for matters that are central to the determination of a level of payments that affect the rate charged for jurisdictional service. See, e.g., Cent. & S.W. Servs., Inc., 48 F.E.R.C. p 61,197, at 61,733-34 (1989), reh'g denied, 49 F.E.R.C. p 61,118 (1989) (collectively "Central"); infra n.5. Yet it is the norm not dispute, not to require 205 filing of contracts that merely affect jurisdictional rates. Most pertinent here, the Commission has explained:
 
 
 10
 For example, a formula rate may have a component covering labor costs. Obviously, if the public utility enters into a new wage agreement, this will affect the rate to be charged. However, the wage agreement would not need to be filed with the Commission, although it might have to be produced in the course of discovery in a litigated case or in an audit.
 
 
 11
 Prior Notice and Filing Requirements Under Part II of the Federal Power Act, 64 F.E.R.C. p 61,139 app. at 61,988 n.3 (1993) ("Prior Notice and Filing").
 
 
 12
 CALPUC acknowledges that the ISO must enter into RMR contracts in order to ensure grid reliability and to carry out the ISO's own jurisdictional transmission services. It does not contend that any non-jurisdictional RMR costs are unjust or unreasonable, or unfairly charged to the Responsible Utilities. Further, it makes no claim that the ISO has changed the manner in which it enters into RMR contracts since the Commission approved Amendment 22 or otherwise changed its methodology for calculating or charging rates for the RMR service it procures. Cf. Ocean State Power II, 69 F.E.R.C. at 61,543. Given the bid-based process used by the ISO to identify and enter into low-bid RMR contracts, it would appear to follow that the Commission could properly rely on a previously approved formula rate and 206 proceedings to ensure just and reasonable rates.[4] CALPUC has three responses: (1) The ISO's 5.2.8 rate cannot be justified as a formula rate because it lacks the necessary specificity; (2) the Commission abused its discretion under 205(c) by failing to require 205 filing inasmuch as the RMR generating units have undisputed locational market power and can and have used that market power to their advantage in negotiating RMR contracts; and (3) the availability of review under 206 does not excuse failure to require filing under 205 in the first instance. Each response is unpersuasive.
 
 
 13
 First, exactly how much detail is necessary, and the nature of that detail, for a particular formula rate will vary. While there is undoubtedly some irreducible minimum of detail needed for a valid formula rate, cf. City of Cleveland, Ohio v. FERC, 773 F.2d 1368, 1376-77 (D.C. Cir. 1985), with some formulae being lengthy, see, e.g., Holyoke Water Power Co. v. FERC, 799 F.2d 755, 756 (D.C. Cir. 1986), the amount of the detail in a formula rate is not the dispositive consideration. Cf. La. Pub. Serv. Comm'n, 174 F.3d at 230-31; Prior Notice and Filing, 64 F.E.R.C. at 61,988 n.3. As the court observed in considering a challenge to a compliance filing alleged to be impermissibly vague, the court's concern is not whether the challenged provisions fall short "of some absolute prescribed standard literally set forth in the statute and regulations," but "of the minimum specificity that the Commission could reasonably require." City of Cleveland, 773 F.2d at 1376. So too here.
 
 
 14
 Contrary to CALPUC's contention, the fact that the ISO has discretion about RMR contracting with non-jurisdictional entities does not make the ISO's formula rate any more of a "blank check" than other formula rates allowing recovery of costs incurred under contracts with non-jurisdictional entities.[5] See Prior Notice and Filing, 64 F.E.R.C. at 61,988 n.3. The ISO functions within a statutory and regulatory context that requires it to select RMR contracts as a result of the Local Areas Reliability Service ("LARS") solicitation process, which is designed to lower RMR costs by designating as RMR units those generating units that can provide needed RMR service at the lowest cost. Although Amendment 22 changed the circumstances under which the ISO operates, its purpose, as relevant here, was to enable the ISO to meet reliability requirements. Furthermore, assuming as CALPUC contends, that prior to Amendment 22, 5.2.8 was originally intended only to allocate to Responsible Utilities the RMR rates determined in other 205 proceedings, the Commission was not thereby precluded from treating 5.2.8 as a formula rate. CALPUC's reliance on the detailed nature of fuel cost adjustment clauses, moreover, does not demonstrate that 5.2.8 fails to provide purchasers with protection equivalent to that which they receive pursuant to such clauses.[6] Insofar as 5.2.8 does not require the ISO to notify customers when a new RMR contract is added to the formula, the court has rejected the view that a formula rate does not provide sufficient notice of the rate to ratepayers. See Transwestern, 897 F.2d at 577-78.
 
 
 15
 For similar reasons, CALPUC's contention that each new RMR contract constitutes a new, separate component of the ISO's formula rate requiring a new 205 filing has been rejected by the Commission, consistent with its position that "periodic adjustments [in costs] made in accordance with the Commission-approved formula do not constitute changes in the rate itself and accordingly do not require [additional] [s] 205 filings." Ocean State Power II, 69 F.E.R.C. at 61,544-45; cf. Wisc. Pub. Serv. Corp., 69 F.E.R.C. p 61,209, at 61,829 (1994). CALPUC's reliance on three recent orders of the Commission shows not that the Commission acted unlawfully in the orders on review, but rather that the Commission responded differently in different circumstances.[7]
 
 
 16
 Moreover, assuming CALPUC could show that the ISO's formula rate was defective in some manner, the remedy would not necessarily be to require RMR contracts with non-jurisdictional entities to be filed under 205; an obvious alternative would be the development of a better formula, and the court would leave that option to the Commission's expertise in rate design.
 
 
 17
 Second, the Commission has long been aware of the locational market power issues inherent in the ISO's efforts to contract for RMR service. See Pac. Gas & Elec. Co., 81 F.E.R.C. at 61,557. The Commission has also been aware of the need to protect against market distortions in the realm of the ISO's RMR operations and resulting contracts with generating units. Cal. Indep. Sys. Operator Corp., 87 F.E.R.C. p 61,250, at 61,968 (1999). In conditionally approving the ISO's operations in 1997, the Commission supported the ISO's "least-cost" approach in selecting RMR units. See Pac. Gas & Elec. Co., 81 F.E.R.C. at 61,555, 61,557-58. In seeking approval of Amendment 22, the ISO explained to the Commission that "excluding Generating Units that were not in the Service Area of any Responsible Utility from consideration in the LARS process could result in higher RMR costs, and would be inconsistent with one of the primary goals of the LARS process--lowering RMR costs by designating as RMR Units those Generating Units that can provide needed RMR services at the lowest cost." The Commission's prior endorsement of the ISO's cost-efficient approach to procuring RMR service along with its orders approving various aspects of the ISO's RMR operations, rebut CALPUC's suggestion that the Commission has been lax in approving Amendment 22.
 
 
 18
 Finally, there is no basis for CALPUC's contention that the Commission's reliance on 206, Cal. Indep. Sys. Operator Corp., 90 F.E.R.C. at 62,042, is misplaced. In approving formula rates, the Commission has relied on 206 as a mechanism to ensure that the rates are just and reasonable, see, e.g., Wisc. Pub. Serv. Corp., 69 F.E.R.C. at 61,829 n.15; Yankee Atomic Elec. Co., 60 F.E.R.C. p 61,316, at 62,096 (1992), and its reliance on 206 has survived judicial scrutiny. See La. Pub. Serv. Comm'n v. FERC, 688 F.2d 357, 361 (5th Cir. 1982); cf. La. Pub. Serv. Comm'n, 174 F.2d at 230- 31. In suggesting that the ISO has expressed the view that 206 review would be limited to challenging the allocation of RMR costs, CALPUC takes the ISO's statement out of context. When the ISO made that statement before the Commission, it was responding to concerns that had been raised about the ISO's allocation proposal. Because relief can be sought pursuant to 206 in the event a pass through of non-jurisdictional RMR contract costs results in unjust and unreasonable rates, the Commission's acceptance of the ISO's formula rate without additional 205 filings does not leave CALPUC or ratepayers without any statutory recourse.[8]
 
 
 19
 Accordingly, we deny the petition.
 
 
 
 Notes:
 
 
 [1]
 The Commission has explained:
 Under the RMR contracts, the ISO pays the RMR unit a portion of its fixed costs to stand ready to deliver an hourly minimum energy requirement set by the ISO (annual availability payment). When generating to ensure reliability, the contracts also allow the RMR unit to receive for the energy it produces either the variable cost payment included in the contract or market prices.
 Cal. Indep. Sys. Operator Corp., 90 F.E.R.C. p 61,345, at 62,135 (2000). Before the Commission, the Northern California Power Agency ("NCPA") stated that the ISO is unable to rely on the market to ensure that RMR units are on line when needed, because the ISO market is
 [a] market burdened by price caps and restrictions ... mak[ing] it particularly difficult to count on the dispatch of RMR units, because units that are needed for only a few hours a year must command very high prices if they are to recover their costs. Price caps prevent this, making RMR contracts a necessity.
 
 
 [2]
 Section 5.2.8 of the ISO tariff provides in relevant part:
 [T]he costs incurred by the ISO under each [RMR] Contract shall be payable to the ISO by the Responsible Utility in whose Service Area the [RMR] Generating Units covered by such [RMR] Contract are located, or, where a [RMR] Generating Unit is located outside the Service Area of any Responsible Utility, by the Responsible Utility or Responsible Utilities whose Service Area are contiguous to the Service Area in which the Generating Unit is located, in proportion to the benefits that each such Responsible Utility receives, as determined by the ISO. Where costs incurred by the ISO under a [RMR] Contract are allocated among two or more Responsible Utilities pursuant to this section, the ISO will file the allocation under Section 205 of the [FPA].
 California ISO Conformed Tariff as of 12-Jan-2001 Through Amendment 36, Tariff Sheet Nos. 140-232, 5.2.8 at 40, http://www.caiso.com/pubinfo/tariffs (effective Oct. 13, 2000) (incorporating language of Amendment 22). Amendment 22 added language addressing RMR generating units outside of a Responsible Utility's service area. Compare id. with California ISO Conformed Copy Through Amendment 20, Tariff Sheet Nos. 121-189, 5.2.8 at 32,http://www.caiso.com/pubinfo/tariffs/conformed/19991013.html (issued April 7, 1999). The cost responsibility for RMR contracts is also reflected in the tariff's definition of "Responsible Utility." California ISO Conformed Tariff as of 12-Jan-2001 Through Amendment 36, Tariff Sheet Nos. 300-387A, Appendix A at 50, http://www.caiso.com/pubinfo/tariffs (effective Oct. 13, 2000).
 
 
 [3]
 Contrary to the positions taken by SoCal Edison and NCPA, CALPUC argued before the Commission that the filed rate doctrine did not apply to RMR costs arising from contracts with nonjurisdictional entities which had not been reviewed by the Commission pursuant to 205. Consequently, CALPUC cannot now challenge 5.2.8's pass through of such costs on the ground that it violates the filed rate doctrine. See, e.g., Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC, 962 F.2d 27, 34-35 (D.C. Cir. 1992); see also 16 U.S.C. 825l(b) (1994). In any event, the court has rejected the notion that charges assessed pursuant to a formula rate violate the filed rate doctrine; rather, the formula itself is the filed rate that provides sufficient notice to ratepayers for purposes of the doctrine. See Transwestern, 897 F.2d at 577- 78.
 
 
 [4]
 CALPUC's reliance on cases like Northern Natural Gas Co. v. FERC, 929 F.2d 1261 (8th Cir. 1991), for the proposition that the bundling of the rates for jurisdictional and non-jurisdictional service makes the non-jurisdictional service one component of the jurisdictional rate is misplaced. As the Commission observes in its Brief at 15, that case confirmed that the Commission may regulate rates charged for non-jurisdictional gathering service when performed in connection with jurisdictional interstate transportation service, Northern Natural, 929 F.2d at 1263, not that it "must regulate all non-jurisdictional services if somehow connected to a jurisdictional service."
 
 
 [5]
 CALPUC relies on Central. In that case, the Commission required the utility to specify its planning reserve in its operating agreement because, absent such a requirement, the utility would have had unfettered discretion to set the level of the reserve which, in turn, affected rates ultimately charged. See 48 F.E.R.C. at 61,733-34; see also 49 F.E.R.C. p 61,118. By contrast, the ISO must pass through 100% of RMR costs under 5.2.8, see supra n.2; see also Cal. Indep. Sys. Operator Corp., 90 F.E.R.C. at 62,042, and, therefore, does not possess the unbridled discretion which the Commission found problematic in Central.
 
 
 [6]
 CALPUC has not suggested that fuel cost adjustment clauses, as a general matter, limit the amount that a component may increase, or decrease, without prior 205 filing and review by the Commission. In Missouri Public Service Co., 48 F.E.R.C. p 61,011 (1989), the Commission observed:
 The fuel adjustment clause is intended to keep utilities whole with respect to changes in the cost of their fuel. It allows utilities to pass through to their ratepayers increases or decreases in the cost of their fuel, without having to make separate rate filings to reflect each change in fuel cost, and without having to obtain Commission review of each change in fuel cost.
 Id. at 61,078 (footnote omitted); see also Pub. Serv. Co. of N.H. v. FERC, 600 F.2d 944, 952 (D.C. Cir. 1979). The ISO's 100% pass through of RMR contract costs under 5.2.8 operates in a similar fashion and serves a similar purpose.
 
 
 [7]
 See Cal. Indep. Sys. Operator Corp., 91 F.E.R.C. p 61,205, at 61,723-24 (2000), order accepting in part and rejecting in part compliance filing, 93 F.E.R.C. p 61,104, at 61,287-89 (2000) (collectively "TAC Cases"); City of Vernon, California, 93 F.E.R.C. p 61,103 (2000). In none of these orders did the Commission require contract-by-contract review of agreements between the ISO and third parties, as CALPUC maintains is required here. Rather, in each order the Commission reviewed the rates of otherwise non- jurisdictional governmental utilities that sought to join the ISO as participating transmission owners. In the TAC Cases, the Commission, after rejecting a proposed amendment to the ISO tariff that contained no mechanism for Commission review of the rates of governmental utilities to become a part of the ISO, 91 F.E.R.C. at 61,723-24, accepted a compliance filing permitting Commission review of decisions of the ISO's internal Revenue Review Panel or, alternatively, allowing non-jurisdictional participating transmission owners to voluntarily submit their proposed rates for Commission review. 93 F.E.R.C. at 61,287-89. Then, pursuant to the rate review procedures established in the TAC Cases, the Commission reviewed the City of Vernon's voluntarily submitted municipal utility rate proposal. City of Vernon, 93 F.E.R.C. at 61,285-86. The Commission's decision to review the rates of non-jurisdictional entities seeking to join the ISO ensures that non-jurisdictional entities join the ISO on the same terms as jurisdictional utilities that are participating transmission owners. Cf. id. at 61,286.
 
 
 [8]
 Having failed to raise before the Commission the issue of the ISO's being a non-profit with no money to pay refunds in a 206 proceeding, CALPUC cannot do so here. See 16 U.S.C. 825l(b); see also Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC, 876 F.2d 109, 112-13 (D.C. Cir. 1989).