**PACIFIC GAS AND ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Enron Power Marketing, Inc., et al., Intervenors.**

**Nos. 01–1187 and 01–1190.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 2002.

Decided Oct. 15, 2002.

Stuart K. Gardiner and Richard L. Roberts argued the causes for utility petitioners. With them on the briefs was Jennifer L. Key.

Lona T. Perry, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor, Federal Energy Regulatory Commission.

Channing D. Strother, Jr. was on the brief for intervenor City of Vernon, California.

Before: EDWARDS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The principal issue in this appeal is whether the review conducted by the Federal Energy Regulatory Commission ("FERC") of the revenue requirements of a non-jurisdictional entity that is part of a jurisdictional independent system operator ("ISO") was sufficient to ensure that the ISO's rates will be just and reasonable under § 205 of the Federal Power Act ("FPA"), 16 U.S.C. § 824d. Southern California Edison Company ("Edison") and Pacific Gas and Electric Company (collectively, "PG&E"), petition for review of three Orders in which FERC approved the transmission revenue requirement of Vernon, a municipally owned utility and non-jurisdictional entity, for use in the California ISO's ("CAISO") transmission access charge. PG&E contends that FERC did not properly evaluate, consistent with its duty under § 205, Vernon's revenue requirements, and arbitrarily and capriciously approved Vernon's requirements based on findings that are unsupported by substantial evidence. We hold that, although FERC has considerable discretion in choosing how to implement its statutory duty, its approach in the Orders on review fails to ensure that the CAISO's rates will be just and reasonable under § 205. Accordingly, we grant the petition and remand the case for further proceedings.

## I.

In Order No. 2000, FERC encouraged the formation of regional transmission organizations. *See* Regional Transmission Organizations, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 (1999), 65 Fed. Reg. 810 (2000), *on reh'g*, Order No. 2000–A, FERC Stats. & Regs. ¶ 31,092, 65 Fed. Reg. 12,088 (2000) (codified at 18 C.F.R. § 35.34), *aff'd*, *Pub. Util. Dist. No. 1 v. FERC*, 272 F.3d 607 (D.C.Cir.2001). The State of California created a regional transmission organization, the CAISO, to operate transmission facilities within California. The CAISO is subject to FERC's regulatory authority, *see Cal. Indep. Sys. Operator Corp.*, 91 F.E.R.C. ¶ 61,205, at 61,724, 2000 WL 711594 (2000), including the statutory requirement under §§ 205 and 206 of the FPA that a utility's rates must be "just and reasonable." 16 U.S.C. §§ 824d, 824e. The CAISO originally consisted of three investor-owned utilities (PG&E, Edison, and San Diego Gas & Electric Company), each of which is subject to FERC's jurisdiction. Each of the utilities is compensated by the CAISO for the use of its facilities through a transmission revenue requirement ("TRR"), which consists of the costs and rate of return to which the utilities are entitled as participating transmission owners. FERC independently examines each of these jurisdictional utilities' TRRs to ensure that they are just and reasonable. *See Cal. Indep. Sys. Operator*, 91 F.E.R.C. at 61,723 n.11. Initially, the CAISO's rates, or transmission access charge ("TAC"), reflected the TRRs of the participating transmission owners in each of three TAC areas. *Id.* at 61,720.

This case arises out of California's efforts to encourage non-jurisdictional, municipal utilities to join the CAISO. *Id.* at 61,720–21. As a general matter, publicly-owned utilities are not subject to FERC's §§ 205 and 206 jurisdiction, *see* FPA § 201(f), 16 U.S.C. § 824(f), although FERC may analyze and consider the rates of non-jurisdictional utilities to the extent that those rates affect jurisdictional transactions, *see S.C. Pub. Serv. Auth.*, 75 F.E.R.C. ¶ 61,209, at 61,696 & n.7, 1996 WL 283302 (1996); *see also Pub. Utils. Comm'n v. FERC*, 660 F.2d 821, 826 (D.C.Cir.1981). The CAISO proposed to

amend its tariff to allow non-jurisdictional utilities or governmental entities that joined the CAISO to recover their TRRs through the CAISO's transmission access charge. *See Cal. Indep. Sys. Operator,* 91 F.E.R.C. at 61,720. Once a new transmission owner ("TO") joined the CAISO, the TAC would reflect the combined TRRs of the owners in each of the three TAC areas, and then, over a ten-year period, a single ISO gridwide TAC would be phased-in. *Id.* However, the CAISO's original tariff proposal did not allow for any FERC review of the TRRs of governmental entities; instead, review was limited to a CAISO Revenue Review Panel. *Id.* at 61,721. In a May 31, 2000 Order, FERC concluded that the CAISO's proposal was inconsistent with FERC's statutory responsibility to ensure that jurisdictional utilities' rates, namely the CAISO's TAC, be just and reasonable. *Id.* at 61,729. In compliance with the May 31, 2000 Order, the CAISO submitted a revised tariff proposal which provided:

> If the Participating TO is not FERC jurisdictional, the Participating TO shall at its sole option: (1) file its High Voltage TRR and Low Voltage TRR for those facilities and Entitlements under the Operational Control of the ISO directly with the Commission in accordance with the rules and requirements established by the Commission; or (2) submit to the ISO its TRR.... The decision of the [Revenue Review] panel shall be subject to review and acceptance by the FERC.

*Cal. Indep. Sys. Operator Corp.,* 93 F.E.R.C. ¶ 61,104, at 61,287, 2000 WL 1610582(2000) [hereinafter "TAC Order"] (alterations in the original). In an October 27, 2000 Order, FERC accepted this revision. *Id.* at 61,288–89.

Pursuant to the CAISO's revised tariff, Vernon, a municipally-owned utility located in the same TAC area as Edison, voluntarily submitted its TRR for FERC review. With certain revisions, FERC "accept[ed] Vernon's use of the rate methodology utilized by [Edison] (an [investor-owned utility] that has determined its TRR) which is a methodology familiar to [FERC]" and approved Vernon's TRR. *City of Vernon,* 93 F.E.R.C. ¶ 61,103, at 61,285, 2000 WL 1824305 (2000) [hereinafter "Vernon Order"]. PG&E sought rehearing, which was denied in an order dated February 21, 2001. *Cal. Indep. Sys. Operator Corp.,* 94 F.E.R.C. ¶ 61,-148, at 61,565, 2001 WL 275502 (2000) [hereinafter "Rehearing Order"]. PG&E now seeks review of the TAC Order, Vernon Order, and Rehearing Order.

## II.

PG&E contends that FERC's review of Vernon's TRR was insufficient to ensure that the CAISO's rates remained just and reasonable because it was based on an inadequate standard of review and contrary to FERC precedent. PG&E also contends that FERC violated § 205 by relying solely on a review of Vernon's rate methodology in order to approve Vernon's TRR. PG&E further contends that by not requiring the CAISO to file cost support for the part of its transmission rate resulting from use of Vernon's facilities or requiring Vernon to meet the CAISO's § 205 obligation, FERC chose an impermissible course and the court should remand with directions for a § 205 inquiry of Vernon's TRR.

▇▇▇ The court reviews FERC's Orders under the arbitrary and capricious standard. 5 U.S.C. § 706(2)(A); *Pub. Utils. Comm'n v. FERC,* 254 F.3d 250, 253–54 (D.C.Cir.2001) [hereinafter "CPUC"]. FERC therefore "must be able to demonstrate that it has made a reasoned decision based upon substantial evidence in the record." *Sithe/Independence Power Partners, L.P. v. FERC,* 165 F.3d

944, 948 (D.C.Cir.1999) (quotations omitted). Because of the highly technical and policy-based nature of rate design, the court's review of whether a particular rate design is just and reasonable is highly deferential. *CPUC*, 254 F.3d at 254. Absent procedural or methodological flaws, the court may only set aside a rate that is outside a zone of reasonableness, bounded on one end by investor interest and the other by the public interest against excessive rates. *Jersey Cent. Power & Light Co. v. FERC*, 810 F.2d 1168, 1176–77 (D.C.Cir.1987) (describing the standard in *FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944)). Pertinent here, the Supreme Court explained:

> The court's responsibility is not to supplant the Commission's balance of these interests [investor and public interest] with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors. Judicial review of the Commission's orders will therefore function accurately and efficaciously only if the Commission indicates fully and carefully the methods by which, and the purposes for which, it has chosen to act, as well as its assessment of the consequences of its orders for the character and future development of the industry.

*In re Permian Basin Area Rate Cases*, 390 U.S. 747, 792, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968). FERC's findings of facts are conclusive if supported by substantial evidence. FPA § 313(b), 16 U.S.C. § 825*l*(b).

The CAISO's TAC methodology is a formula rate through which the TRR of each participating transmission owner is collected. *See generally CPUC*, 254 F.3d at 254. As such, the TRR of each participating transmission owner can be conceptualized not as its own rate but rather as a cost of the CAISO. Understood this way, Vernon's TRR need not be independently subjected to the just and reasonable standard of § 205, as PG&E contends. While FERC does subject the TRRs of jurisdictional participating transmission owners to an independent § 205 just and reasonable review, FERC may take a different approach as to Vernon, over which FERC lacks independent jurisdiction, so long as FERC can ensure by examining Vernon's TRR that the CAISO's rates will ultimately be just and reasonable.

FERC's approach is to allow a non-jurisdictional entity to file its costs directly with the FERC, in effect reducing paperwork and speeding the regulatory process. *See Public Utils. Comm'n*, 660 F.2d at 824. FERC then uses its review of Vernon's filed costs—i.e., its TRR—to evaluate whether the CAISO's jurisdictional rates are permissible, a form of indirect regulation. An analogous approach was upheld as to small natural gas producers in *FPC v. Texaco, Inc.*, 417 U.S. 380, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974). In *Texaco*, FERC allowed small gas producers to sell gas at market prices even if those prices were above the maximum area rates set by FERC, *id.* at 384, 94 S.Ct. at 2320, inasmuch as it could indirectly regulate the rates of the small producers by regulating them as costs of the large producers, *id.* at 384, 386–87, 94 S.Ct. at 2320, 2320–21. The Supreme Court held that "the Commission is free to engage in indirect regulation of small producers by reviewing pipeline costs of purchased gas, providing that it insures that the rates paid by pipelines, and ultimately borne by the consumer, are just and reasonable." *Id.* at 401, 94 S.Ct. at 2328.

██ In principle, then, there is no objection to the general approach taken by FERC. Neither FERC nor Vernon suggest that FPA § 201, exempting "a State or any political subdivision of a State . . .

from the review provisions of § 205," 16 U.S.C. § 824(f), bars FERC's review of Vernon's TRR to the extent necessary to ensure that the CAISO's rates are just and reasonable. However, the only place where FERC described this approach— the approach it now relies upon in its brief—was in its Rehearing Order. Its explanation there of the standard it applied in implementing that approach is limited to the statement: "[W]e evaluated Vernon's proposed TRR as a means of ensuring that the costs ultimately charged by the ISO are just and reasonable." *Rehearing Order*, 94 F.E.R.C. at 61,564. Nowhere does FERC elaborate on the application of this standard to Vernon's TRR or to the CAISO's rates; in other words, it is unclear under what standard FERC reviewed Vernon's TRR to ensure that a pass through of its costs by the CAISO would be just and reasonable. Typically, "[u]nder the Commission's cost-of-service ratemaking, before a utility's costs of providing jurisdictional service will be disallowed, those costs must be examined and found to be excessive or improper." *Ind. & Mich. Mun. Distribs. Ass'n,* 62 F.E.R.C. ¶ 61,189, at 62,237, 1993 WL 88990 (1993), *aff'd sub nom. Ind. Mun. Power Agency v. FERC,* 56 F.3d 247 (D.C.Cir.1995). In its brief, FERC recognizes that it generally judges pass-through costs using this prudence test. But this prudence standard is nowhere to be found in the Orders at issue.

In contrast, elsewhere in the administrative proceedings, the most prominently stated description of the approach that FERC undertook was as follows:

> [T]he purpose of our review is to determine whether Vernon's rate methodology, in the context of Vernon's participation in a Commission jurisdictional public utility ISO, will result in a just and reasonable component of the ISO's rates.

*Vernon Order,* 93 F.E.R.C. at 61,285; *accord Rehearing Order,* 94 F.E.R.C. at 61,-563; *TAC Order,* 93 F.E.R.C. at 61,389. On its face, this statement suggests that FERC did not consider Vernon's TRR only as a cost component of the CAISO's formula rate, but rather reviewed Vernon's rate methodology independently to determine if Vernon's TRR was itself just and reasonable, albeit under an arguably less strict standard of just and reasonable. This is confirmed by other statements in the Orders that FERC concluded that Vernon's TRR was itself just and reasonable and not merely that, when passed through into the CAISO's formula rate, the CAISO's rate remained just reasonable:

> [T]he Commission finds that Vernon's proposed rate methodology and resulting high voltage TRR, as modified, are just and reasonable.

*Vernon Order,* 93 F.E.R.C. at 61,283.

> In the [Vernon Order], the Commission found that the proposed rate methodology and resulting TRR filed by the City of Vernon, in accordance with the ISO's alternative filing procedure, were just and reasonable as modified.

*Rehearing Order,* 94 F.E.R.C. at 61,562.

The filed protests by PG&E and Edison argued that all aspects of Vernon's TRR had to be found just and reasonable under the § 205 or comparable standard, *Vernon Order,* 93 F.E.R.C. at 61,284–85, and took issue with various claimed costs of services, including the proper rate of return. Id. The CAISO sought guidance on three aspects of Vernon's calculation of its TRR, regarding cost deferrals and use of Edison's rate of return and depreciation factor. *Id.* at 61,285. FERC did address some of these concerns. It directed Vernon to modify its TRR by (1) using Edison's capital structure as well as its return on common equity as a proxy and (2)

deleting unused transmission capacity expense. *Id.* at 61,286. In concluding that Vernon's "resulting high voltage TRR" was just and reasonable, *see Vernon Order*, 93 F.E.R.C. at 61,282, and in addressing the evidence supporting its costs provided by Vernon, *see Rehearing Order*, 94 F.E.R.C. at 61,564, FERC also considered the costs that underlay Vernon's TRR. We therefore reject PG&E's contention that FERC improperly relied solely on cost methodology. But FERC never clarified and developed either the approach or the standard that it applied in this case.

In justifying its approach, FERC stated: "We believe that the approach we took properly balances our duty to ensure the justness and reasonableness of the ISO's rates with the fact that Vernon itself is not jurisdictional for purposes of FPA Section 205." *Rehearing Order*, 94 F.E.R.C. at 61,564. In none of the Orders on review did FERC expand on this justification for its "approach" aside from noting that it may approve other approaches in the future, *id.* at 61,563.

FERC's efforts to defend its approach on appeal are to no avail. First, FERC seeks to defend its vague standard under the "end result" test identified in *Hope Natural Gas*, 320 U.S. at 602. However, it is long settled that "[e]xperience has taught that a determination of whether the result reached is just and reasonable requires an examination of the method employed in reaching that result." *City of Charlottesville v. FERC*, 661 F.2d 945, 950 (D.C.Cir.1981) (citing *Permian Basin Area Cases*, 390 U.S. at 791–92, 88 S.Ct. at 1372–73). Second, FERC maintains, relying on *CPUC*, 254 F.3d 250, that as long as the formula rate filed by the CAISO has been approved, it need not conduct any separate review under § 205 of the CAISO's pass through of Vernon's TRR costs via that formula rate. But, FERC itself acknowledged in requiring FERC review

of non-jurisdictional TRRs that it "must be able to determine that the pass through of costs by the [CAISO] to its customers are just and reasonable." *Cal. Indep. Sys. Operator Corp.*, 91 F.E.R.C. at 61,724. Moreover, in *CPUC*, the court held that separate § 205 review was unnecessary for "contracts that merely affect jurisdictional rates" because the CAISO used a bid-based process to ensure that it paid as little as possible for those contracts. 254 F.3d at 255. The Vernon TRR at issue, on the other hand, is filed directly with FERC, and the CAISO has no authority to approve or disapprove it, *see TAC Order*, 93 F.E.R.C. at 61,287, giving Vernon "unfettered discretion to set the level of" its TRR, *see CPUC*, 254 F.3d at 256 n. 5. FERC also appears to have relied on its review of Vernon's TRR to deny future "collateral" attacks on the justness and reasonableness of the CAISO's pass through of Vernon's costs. *See Cal. Indep. Sys. Operator Corp.*, 94 F.E.R.C. ¶ 61,147, at 61,558, 2001 WL 275501 (2001). Finally, FERC's reliance for the first time on appeal on FPA § 206, which allows FERC or consumers to retroactively challenge rates as not just and reasonable, as affording consumers sufficient protections, is a post-hoc rationalization of counsel, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962), that cannot cure the deficiency of the initial review.

The only remaining question is what standard of review should apply, and on this point it is clear that § 205 imposes a "just. and reasonable" standard. FERC acknowledges that it is required under § 205 to determine that the rate ultimately charged by an ISO is "just and reasonable." *See* Respondent's Br. at 22–23. Yet the Orders on review reveal, as noted, no method for ensuring this, neither specifying what approach nor defining the standard FERC applied in determining that

the CAISO's rates were "just and reasonable" after the inclusion of Vernon's TRR. On appeal FERC does not claim that its somewhat amorphous standards ensure that Vernon's TRR itself will be just and reasonable. While FERC's approach might be acceptable if FERC tested the final ISO composite rate (which included Vernon's requirements) to determine whether it was just and reasonable, FERC acknowledged at oral argument that the CAISO's rate is filed without such review. *See generally CPUC,* 254 F.3d at .254. Thus, "[a]t the very least, the [approach] is so ambiguous that it falls short of that standard of clarity that administrative orders must exhibit," *see Texaco,* 417 U.S. at 395–96, 94 S.Ct. at 2325, and a remand is required so that FERC can articulate with clarity what approach and standard are governing its review and how both ensure the CAISO's rates are just and reasonable under § 205.

## III.

In light of the remand, we briefly address PG&E's contention that FERC's method of review of Vernon's TRR was arbitrary and capricious on several procedural and substantive grounds.

■ The claimed procedural error concerns FERC's denial of a hearing. PG&E maintains FERC precedent establishes that all material, factual disputes warrant a hearing and discovery, which were both denied to PG&E. Inasmuch as FERC may have to consider this question anew on remand, we need only point out that FERC may properly deny an evidentiary hearing if the issues, even disputed issues, may be adequately resolved on the written record, at least where there is no issue of motive, intent, or credibility. *Texaco, Inc. v. FERC,* 148 F.3d 1091, 1100 (D.C.Cir. 1998). PG&E does not contend that the disputed issues could not be resolved on the written record and offers no evidence

that would have required such a hearing. Its contentions pose legal and policy disputes as to the appropriateness of the evidence provided by Vernon, *see Carnegie Natural Gas Co.,* 47 F.E.R.C. ¶ 63,025, at 65,063, 1989 WL 261369 (1989), and as such do not warrant a hearing, *Union Pac. Fuels, Inc. v. FERC,* 129 F.3d 157, 164 (D.C.Cir.1997). Under the circumstances, the court defers to FERC's determination that a hearing was not required. *See Ala. Power Co. v. FERC,* 993 F.2d 1557, 1565 (D.C.Cir.1993). That said, it does not follow that legal and policy disputes about the sufficiency of the evidence might not require further elaboration on remand.

The substantive errors, PG&E maintains, arise because FERC (1) failed to look for cost justification of Vernon's TRR and improperly declined to examine certain costs because they were de minimis, and (2) did not justify Vernon's reliance on Edison's rates of return and depreciation. FERC's threshold response, that these contentions fail because PG&E does not claim that the CAISO's rates are not just and reasonable, misses the mark. When PG&E contends that FERC lacked adequate support to conclude that Vernon's TRR was just and reasonable, PG&E is necessarily contending that the CAISO's TAC, to the extent it has as a component Vernon's TRR, is not just and reasonable. Indeed, any failure by PG&E to challenge explicitly the CAISO's resulting TAC may well be a result of FERC's amorphous analysis purporting to determine, under an unspecified standard of review, that *Vernon's* TRR was a just and reasonable component of the CAISO's rate. In the end, FERC's responsibility appears the same: whatever standard it might apply, it must be able to show that there was substantial evidence to support the conclusion that the CAISO's rates after the inclusion of Vernon's TRR are just and reasonable and

# 1120

that this conclusion was not arbitrarily and capriciously reached.

Regarding costs, "it has come to be well established that electrical rates should be based on the costs of providing service to the utility's customers, plus a just and fair return on equity." *Ala. Elec. Coop., Inc. v. FERC,* 684 F.2d 20, 27 (D.C.Cir.1982). FERC generally requires that rates be cost supported. *Id.* PG&E maintains that FERC improperly relied solely on sworn cost support and testimony and that there is a lack of specific evidence to support FERC's conclusions; according to PG&E, this prevented FERC from investigating why Vernon's costs were proportionately so much higher than Edison's. With respect to the administrative and general costs, PG&E contends that FERC departed from pre-existing precedent not to disregard de minimis costs, citing *People's Elec. Coop.,* 84 F.E.R.C. ¶ 61,229, 1998 WL 770185 (1998); *N. Ind. Pub. Serv. Co.,* 66 F.E.R.C. ¶ 61,213, 1994 WL 48048 (1994), when it justified its review of those costs by pointing out that Vernon's administrative and general expense was approximately 0.04 percent of the CAISO's rate. *Rehearing Order,* 94 F.E.R.C. at 61,564 n.7.

■ FERC persuasively responds that it did review the costs underlying Vernon's proposed rate methodology and that in large part they were "objectively verifiable." Although the supporting data for Vernon's TRR costs do not meet the requirements of 18 C.F.R. § 35.13, which apply to the rate filings of jurisdictional utilities, PG&E never specifically raises this as a challenge to the Orders and, more importantly, for reasons discussed in Part II, FERC need not apply to non-jurisdictional utilities the requirements of its regulations applicable to jurisdictional utilities. In the Rehearing Order, FERC discussed each element of Vernon's costs, noting that most of its costs were specified

in work papers from various "transmission projects" in which Vernon had ownership interests and came from expenses paid to other utility corporations for transmission of Vernon's electricity, expenses that were "a pass through of verifiable transmission expenses" paid to those utilities. *Rehearing Order,* 94 F.E.R.C. at 61,564. With respect to Vernon's administrative and general costs, FERC reviewed this cost, indicating that it was approximating 0.04 percent of the CAISO's rate, a sufficient analysis to defeat PG&E's contention that FERC departed from preexisting precedent not to disregard de minimis costs. Given our deferential standard of review, FERC's review of Vernon's costs was not arbitrary and capricious. Rather, the more fundamental problem is the amorphous standard by which FERC has reviewed the impact of Vernon's TRR on the CAISO's rates.

■ Regarding Vernon's use of Edison as a proxy for the rate of return on common equity and the depreciation rate, the Orders on review provide only an inadequate conclusory statement that FERC thought use of Edison as a proxy was appropriate because Edison and Vernon were in the same TAC area. *Vernon Order,* 93 F.E.R.C. at 61,286. Not only does the record reflect that Vernon itself sought to distinguish itself from Edison, at least for the purposes of being allowed to include unused transmission expense in its TRR, the filed protests presented unanswered challenges to allowing Vernon to use Edison's rates. *Vernon Order,* 93 F.E.R.C. at 61,284; *see also Rehearing Order,* 94 F.E.R.C. at 61,563. While use of a surrogate capital structure or return on equity may be appropriate for a governmental entity, FERC did not explain why such a proxy was necessary nor justify the selection of Edison as a surrogate by considering and examining, for example,

whether Vernon and Edison share common risks. *Cf. S. Cal. Edison Co.,* 92 FERC ¶ 61,070, at 61,264–67, 2000 WL 1100260 (2000). Vernon's use of Edison's rate-making methodology bears no obvious correlation to an appropriate return on equity for Vernon, and mere geographical proximity hardly appears,. absent further explanation, a sufficient warrant for the same return on equity or the same capital structure. A similar problem exists with regard to FERC's explanation of its approval of Vernon's reliance on Edison's 3.2% rate of depreciation. FERC's conclusion that its choice is "reasonable," *Rehearing Order,* 94 F.E.R.C. at 61,565, is thus insufficient to survive arbitrary and capricious review.

Perhaps on remand FERC may be able to provide an adequate explanation for allowing Vernon to use Edison as a proxy. FERC did adequately explain in the Rehearing Order that the "alternative proposal to use a cost of capital equivalent to the debt costs of other California municipals does not represent a superior proxy for Vernon[, because] Vernon's facilities were not financed with tax-exempt debt or bonds of any kind." *Rehearing Order,* 94 F.E.R.C. at 61,565. However, the rejection of a single alternative does not alone warrant adoption of Edison as a proxy. On appeal, FERC maintains that it was necessary for Vernon to rely on Edison's capital structure and overall return as a proxy because Vernon's return could only be measured indirectly, and Vernon and Edison had the same risks because they provide services in the same TAC area. The Orders on review do not provide that explanation and the court cannot rely on FERC's post hoc justifications for its action. *Burlington Truck Lines,* 371 U.S. at 168–69, 83 S.Ct. at 245–46.

Accordingly, because the Orders on review provided no explanation as to how or why FERC's review of Vernon's TRR produced the necessary result, namely, just and reasonable rates for the CAISO, we grant the petition and remand the case for further proceedings. In doing so we are not unmindful of the complexities underlying Order No.2000 and FERC's regional approach, and that FERC may wish to retain flexibility regarding the nature of its review of the TRRs of individual non-jurisdictional entities. *Vernon Order,* 93 F.E.R.C. at 61,285. Nevertheless, while FERC has discretion in formulating its approach with respect to a nonjurisdictional utility, the choice it makes must ensure that the CAISO's rates meet the just and reasonable standard of § 205.