AMERICAN DENTAL ASSOCIATION,
et al., Appellants,

v.

Donna E. SHALALA, Secretary, United
States Department of Health and
Human Services, Appellee.

No. 92–5038.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 2, 1993.

Decided Aug. 27, 1993.

Melvin C. Garbow, Washington, DC, argued the cause for appellants. With him on the briefs were Andrew T. Karron and Patricia H. Anderson, Washington, DC.

Sylvia T. Kaser, Atty., Dept. of Justice, Washington, DC, argued the cause for appellee. With her on the briefs were Stuart M. Gerson, Acting Atty. Gen., Jay B. Stephens, U.S. Atty., Washington, DC, at the time the briefs were filed, and Barbara C. Biddle, Atty., Dept. of Justice, Washington, DC.

Bennett Boskey, Ellis Lyons, and Edward A. Groobert, Washington, DC, filed a brief for amicus curiae, American Optometric Assn.

Before: MIKVA, Chief Judge, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

The American Dental Association and others (referred to collectively as "ADA") appeal a district court decision granting summary judgment in favor of the Department of Health and Human Services ("HHS" or "the Department") in an action challenging HHS regulations implementing the Health Care Quality Improvement Act of 1986.

The Health Care Act requires any "entity" which makes payments in settlement of (or in satisfaction of a judgment in) a medical malpractice claim to report the payments to a central data bank established by the Department. The district court held that regulations requiring any "person or entity" to report, and including fee refunds in the class

of payments that must be reported, represent reasonable interpretations of the reporting provisions of the Act. ADA claims error, arguing that the regulations impermissibly enlarge the class of payors that must report and the type of payments that must be reported.

Although the Act does not define the term "entity," its language and structure indicate clearly that Congress did not intend the statutory term "entity" to include individual practitioners. We therefore reverse and remand to the district court with instructions to remand to HHS for further proceedings consistent with this opinion.

## I. Background

Congress enacted the Health Care Quality Improvement Act of 1986 ("the Health Care Act" or "the Act"), 42 U.S.C. §§ 11101–11152, to improve the quality of medical care and to restrict the ability of incompetent doctors and dentists to move from state to state and thereby evade discovery or disclosure of their damaging or incompetent performance. 42 U.S.C. § 11101(1), (2). The Act directs HHS to establish a national data bank for the collection and dissemination of malpractice information. The Act further requires that

> [e]ach entity (including an insurance company) which makes payments under a policy of insurance, self-insurance, or otherwise in settlement (or partial settlement) of, or in satisfaction of a judgment in, a medical malpractice action or claim shall report ... information respecting the payment and circumstances thereof.

*Id.* § 11131(a). The Act also provides that failure to report as required is subject to a civil penalty of up to $10,000. *Id.* § 11131(c).

The HHS regulation implementing the reporting requirements of the Health Care Act requires that "[e]ach *person or entity* ... which makes a payment under an insurance policy, self-insurance, or otherwise" must report. 45 C.F.R. § 60.7 (emphasis added). ADA argued below that this regulation violates the statute in two respects. First, it expands the class of "payors" required to report from any "entity" to any "person or entity"—thus sweeping in individual doctors and dentists who are not required to report under the Act. Second, it enlarges the class of payments that must be reported to include "non-insurance" types of payments such as fee refunds.

The district court upheld the HHS regulation on cross-motions for summary judgment, holding that "[t]he interpretation of the statute that plaintiffs endorse would undermine the purpose of the Act...." *American Dental Association v. Sullivan,* No. 90–2673, 1991 WL 277332 (D.D.C. December 12, 1991). This appeal followed.

## II. Analysis

■ We evaluate an agency's interpretation of a statute that it administers under the familiar two-step test of *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "First, always, is the question of whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. We proceed to *Chevron*'s second step, and approve any reasonable agency construction of the statute, *only* if the statute is silent or ambiguous on the disputed point. *Id.* at 843, 104 S.Ct. at 2782; *accord Public Employees Retirement System v. Betts,* 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989); *Atlanta College of Medical and Dental Careers v. Riley,* 987 F.2d 821, 827 (D.C.Cir.1993); *Wolverine Power Co. v. FERC,* 963 F.2d 446, 449–50 (D.C.Cir.1992).

■ We resolve this dispute at the first step of the *Chevron* analysis. The Health Care Act reveals unmistakably that Congress did not intend to encompass any individual doctor or dentist as an "entity" that must report to the National Practitioner Data Bank. The Act does not define "entity," but the term as used in the Act refers uniformly to groups and organizations. Whenever the Act discusses individual persons, words such as "physician," "doctor," "dental surgeon," "individual," and "person" are consistently employed. Moreover, the phrase "person *or*

entity" appears elsewhere in the Act, *see* 42 U.S.C. § 11137(c) (emphasis added), which would be nonsensical if "entity" already encompassed "person." Thus, all of the textual evidence points in one direction: Congress did not intend the term "entity" to encompass individual practitioners.

The statute invariably employs the term "entity" to describe *organizations and groups* that are involved in the evaluation of medical practitioners. For example, "health care entity" is defined as follows:

> (i) a hospital ...,
>
> (ii) an entity (including a health maintenance organization or group medical practice) that provides health care services and that follows a formal peer review process ..., and
>
> (iii) ... a professional society (or committee thereof) of physicians or other licensed health care practitioners that follows a formal peer review process....

42 U.S.C. § 11151(4)(A). Thus, "entity" refers in a single statutory definition to hospitals, health maintenance organizations, group medical practices, and professional societies. Elsewhere throughout the Act, "entity" often appears shortly after "health care entity" as a shorthand reference to the longer term. *See, e.g., id.* §§ 11111(b); 11112(b)(3)(A)(ii); 11133(a)(1)(B)(i), (a)(1)(C), (a)(2), (c)(1); 11137(c).

The Health Care Act also uses "entity" in reference to other groups and organizations, such as state boards of medical examiners, *see id.* §§ 11132(b), 11133(c)(2) ("If ... the Secretary determines that a Board of Medical Examiners has failed to report ..., the Secretary shall designate *another qualified entity* for the reporting of information...."); insurance companies, *see id.* § 11131(a) ("Each entity (including an insurance company) ... shall report...."); and, again, hospitals, *see id.* § 11151(5) ("The term 'hospital' means an entity described in paragraphs (1) and (7) of section 1395x(e) of this title."). We have reviewed each and every use of the term "entity" in the Act—the Congress's unvarying practice is to use the term to refer to groups and organizations. We will not attribute a different meaning to the term in the section requiring all entities to report mal-

practice payments. *See Morrison–Knudsen Construction Co. v. Director, OWCP,* 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983) ("[A] word is presumed to have the same meaning in all subsections of the same statute."); *Wolverine Power,* 963 F.2d at 450.

The Health Care Act uses terms other than "entity" whenever referring to individuals, whether or not they are doctors or dentists. A "physician" is defined in the Act as "a doctor of medicine or osteopathy or a doctor of dental surgery or medical dentistry legally authorized to practice ... or any individual who ... holds himself or herself out" as such. . *Id.* § 11151(8). "The terms 'licensed health care practitioner' and 'practitioner' mean ... an individual (other than a physician) who is licensed or otherwise authorized by the States to provide health care services." *Id.* § 11151(6). The Act also makes ample use of the word "person" to refer to individuals. *See, e.g., id.* §§ 11111(a)(2) ("[N]o person (whether as a witness or otherwise) providing information to a professional review body ... shall be held, by reason of having provided such information, to be liable in damages under any law...."); 11111(a)(1)(B)–(D) (extending the same immunity to "any person" who works for or otherwise assists a professional review body). These defined terms are used repeatedly throughout the Act—but neither appears in § 11131(a), which sets out the Act's general reporting requirement. We find great significance in the fact that Congress chose to use only the term "entity" in setting out the requirement to report malpractice payments. *See Wolverine Power,* 963 F.2d at 451 (construing statutory penalties under the Federal Power Act directed at a "licensee" not to apply to a "person").

Yet another textual sign of congressional intent is the repeated use of the term "entity" in combination with terms signifying individuals. Particularly telling, the Act provides that "[n]o person *or* entity ... shall be held liable in any civil action with respect to any report...." *Id.* § 11137(c); *see also id.* § 11112(b)(3)(A)(i)–(iii) (notice and hearing requirement met by a proceeding before an arbitrator or panel that is "mutually accept-

able to the physician and the health care entity" or "appointed by the entity and . . . not in direct economic competition with the physician involved." The disjunctive use of the terms "person" and "entity" provides still more evidence that Congress did not intend for "entity" to encompass individual persons.

ADA also argues that HHS uses the terms "entity" and "person" elsewhere in their regulations in a manner inconsistent with their interpretation of the Act, and that the penal character of the Health Care Act requires a narrow construction. We need not address these additional arguments because the language and structure of the Health Care Act are sufficient to establish clear congressional intent on the precise question at issue. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782; *Public Employees Retirement System,* 492 U.S. at 171, 109 S.Ct. at 2863; *Atlanta College of Medical and Dental Careers,* 987 F.2d at 827; *Wolverine Power,* 963 F.2d at 449–50.

HHS attempts to escape the conclusion that Congress did not intend for "entity" to include individual practitioners by relying on the asserted "plain meaning" of the word. According to the Department, an entity is " '[s]omething that exists independently. . . . A particular and discrete unit; an entirety[.]' " HHS Br. at 36 (quoting American Heritage Dictionary of the English Language (New College ed. 1976)). This sheds little light on whether "entity" includes individual people. In fact, recent decisions have distinguished persons from entities in their "known and ordinary signification[s]." *City of Tucson v. Commissioner,* 820 F.2d 1283, 1288 (D.C.Cir.1987) (quoting *Old Colony R.R. v. Commissioner,* 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484 (1932)); *see also Wolverine Power,* 963 F.2d at 447. Thus, the "plain meaning" of "entity" is entirely consistent with its use throughout the Health Care Act.

The district court upheld the HHS regulation based on its conclusion that the ADA interpretation of the Health Care Act would undermine the statute's purpose. *American Dental Association v. Sullivan,* No. 90–2673, 1991 WL 277332 (D.D.C. December 12, 1991). The district court's reliance on the broad statutory purpose is flawed because the spe-cific statutory language at issue is clear on its face. We generally look beyond the clear language of a statute to determine congressional intent only in extraordinary circumstances, such as when the literal meaning leads to an absurd or irrational result. *See Wolverine Power,* 963 F.2d at 452 (citing numerous cases). A plain reading of the Health Care Act produces no such problem.

The requirement that only entities report to the National Practitioner Data Bank does not fundamentally undermine the Act. The HHS regulation as written does require more reporting than would a regulation that comports with the plain language of the statute. But that does not suggest that a literally faithful regulation would eviscerate the Act. There is no evidence on the record that many or most malpractice claims will not continue to be settled through insurance, and thus reported to the National Practitioner Data Bank by the insurance company. Moreover, even those claims that are settled through a direct payment from a practitioner will be reported if they come to the attention of an entity such as a peer review board. In the face of clear statutory language limiting the reporting duty to entities, there is no basis for concluding that Congress intended a different and more burdensome result.

### CONCLUSION

The HHS regulation requiring each "person or entity" that makes malpractice payments to report to the National Practitioner Data Bank violates the clear language of the Health Care Act insofar as it requires individual practitioners to report. We reverse and remand to the district court with instructions to remand to HHS for further proceedings consistent with this opinion. Our holding renders moot ADA's further claim that HHS has improperly expanded the class of payments that practitioners must report. We likewise do not address the separate contentions raised by *amicus curiae,* the American Optometric Association, because they are beyond the scope of the issues raised below by the appellants. *See Kamen v. Kemper Financial Services,* — U.S. —, — n. 4, 111 S.Ct. 1711, 1716 n. 4, 114 L.Ed.2d 152 (1991); *United Parcel Service v.*

*Mitchell,* 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 1563 n. 2, 67 L.Ed.2d 732 (1981). The decision of the district court is

*Reversed and remanded.*