# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-3782

_____

| | | |
|---|---|---|
| Alliant Energy; Aquila Power; Basin Electric Power Cooperative; British Columbia Hydropower Exchange; Citizen Power Sales, LLC; Dairyland Power Cooperative; GYN-SYS Energy; Great River Energy; Kansas City Power & Light Company; Lincoln Electric System; Mid American Energy Company; Minnesota Municipal Power Agency; Minnesota Power, Inc.; Minnkota Power Cooperative; Northern States Power Company; Omaha Public Power District; Otter Tail Power Company; Rainbow Energy Marketing; Southern Minnesota Municipal Power Agency; St. Joseph Light & Power; Sunflower Electric Power Corporation; Tenaska Power Services Company; Utilicorp United, Inc.; Wisconsin Public Power, Inc., | * * * * * * * * * * * * * * * * * * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Plaintiffs - Appellees, | * | |
| | * | |
| United States of America, on behalf of the Western Area Power Administration, Department of Energy, | * * * * | |

|                                              |     |
|----------------------------------------------|-----|
| Intervenor Plaintiffs - Appellee,            | *   |
|                                              | *   |
|                                              | *   |
| v.                                           | *   |
|                                              | *   |
| Nebraska Public Power District, a public corporation and political subdivision of the State of Nebraska, | *   |
|                                              | *   |
|                                              | *   |
|                                              | *   |
|                                              | *   |
|                                              | *   |
| Defendant - Appellant.                       | *   |

_____

Submitted: January 16, 2003

Filed: October 24, 2003
_____

Before HANSEN,[1] Chief Judge, MORRIS SHEPPARD ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Members of the Mid-Continent Area Power Pool ("MAPP") and the Western Area Power Administration ("WAPA") sued the Nebraska Public Power District ("NPPD") for breach of contract. NPPD–also a MAPP member–collected fees from its customers under a special provision of the MAPP contract (the "Restated Agreement"). Other MAPP members collected similar charges from their customers. Later, the Federal Energy Regulatory Commission ("FERC") declared some of these

---

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

fees discriminatory and ordered MAPP members to make refunds. Appellees made refunds, but NPPD refused to do so. This suit then ensued. After the district court[2] granted summary judgment in favor of Appellees, NPPD appealed. We affirm.

## I.

MAPP is a voluntary, unincorporated association composed of energy companies–including investor-owned, cooperative, and public utilities. MAPP was established so that its members may pool resources to coordinate efficient, reliable production and distribution of electric service within its geographic region.[3] Each of the parties in this case is a member of MAPP and signatory to the enabling agreement–known as the Restated Agreement. The Restated Agreement sets forth the contractual rights and obligations of all MAPP members.

MAPP has amended the Restated Agreement as the electric utility industry has evolved. Once the bastion of large, integrated monopolies, the industry entered a transitional phase during the 1990s, which incorporated some aspects of market competition. The migration of the electric utility industry towards a competitive economic model required changes in MAPP's operation. Hence, MAPP has occasionally modified its Restated Agreement to address the changing economic and regulatory environment. Specifically, in 1996, MAPP amended the Restated Agreement to establish rates for transactions with non-MAPP members. The new section–Section 2.4 of Schedule F–required MAPP members "to compensate [other] Members for third party use of their systems in connection with [these] sales or

---

[2] Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[3] MAPP currently has over 100 members in the following states and provinces: Minnesota, Nebraska, North Dakota, Manitoba, Saskatchewan, Wisconsin, Montana, Iowa, South Dakota, Kansas, and Missouri. App. at 59, 444. NPPD, like many of MAPP's members, is a public corporation and electric utility company. *Id.*

purchases." After Section 2.4 was enacted, NPPD and the other MAPP members began to collect tariffs for such third party use.[4]

However, in April, 1999, FERC issued a specific order requiring MAPP to eliminate Section 2.4 due to unacceptable "inconsistent pricing."[5] *Enron Power Mktg., Inc. v. Mid-Continent Area Power Pool*, 87 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,075 (Apr. 15, 1999). The FERC order required MAPP to remove Section 2.4 from Schedule F of the Restated Agreement and to refund the charges to these customers. The order applied retroactively to March 1, 1997. On November 1, 1999, MAPP's board of directors complied. Accordingly, MAPP's members refunded their portion of excess charges that they received under the discriminatory tariff. NPPD, however, refused. As a result, Appellees sued NPPD for breach of contract. In the suit, Appellees requested a refund of the excess charges, which were calculated to be $2,396,578.63, that NPPD collected under the invalidated section.

After the suit was filed, Appellees moved for summary judgment. In its order, the district court found that the Restated Agreement obligated all members–including NPPD–to refund the charges that FERC found discriminatory. The court thus granted Appellees' motion and ordered NPPD to refund the excess charges. On appeal, NPPD

---

[4] Prior to 1994, the Restated Agreement required MAPP members to provide free, reciprocal transmission service over their transmission facilities. In 1994, the Restated Agreement was amended; MAPP titled this amendment "Schedule F." After Schedule F was enacted, MAPP members were permitted to charge each other a fee for transmission service over their transmission facilities. However, Schedule F set this fee at a discounted, distance-based rate rather than at the usual individual transmitting members' tariff rates. MAPP then collected and pooled the transmission charges and paid the members of MAPP for the use of their system from the pooled funds.

[5] The FERC order was appealed and the United States Court of Appeals for the District of Columbia affirmed FERC's ruling. *Alliant Energy Corp. v. FERC*, 253 F.3d 748, 750 (D.C. Cir. 2001).

argues that (1) the Restated Agreement contains no express provisions which require NPPD to refund the excess charges; and that (2) FERC has no jurisdiction over state entities like NPPD. We disagree and hold that these arguments fail to encompass NPPD's full contractual liability under that Restated Agreement.

## II.

"We review de novo a grant of summary judgment, applying the same standard as the district court." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002) (citation omitted). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002) (citation omitted). In this diversity case, we also review the district court's interpretation of Minnesota law de novo. *Walk v. Starkey Mach., Inc.*, 180 F.3d 937, 939 (8th Cir. 1999) (citations omitted).[6]

## A.

NPPD first notes that when MAPP amended the Restated Agreement, MAPP failed to insert an express provision that required NPPD to retroactively refund the tariffs. Because the Restated Agreement provides no such provision and because the FERC orders cannot directly apply to NPPD, NPPD reasons that it is not required to retroactively reimburse the discriminatory tariffs. However, we find such an argument unpersuasive.

Admittedly, MAPP did not insert an express provision, which would have required NPPD to retroactively refund the discriminatory tariffs. However, MAPP did not have to. When a contract provides that its terms are subject to a regulatory body,

---

[6] Article 13.8 of the Restated Agreement provides that the laws of Minnesota control the obligations and procedures of the Agreement.

all parties to that contract are bound by the actions of the regulatory body. *Inter-City Gas Corp. v. Boise Cascade Corp*., 845 F.2d 184, 187 (8th Cir. 1988) (holding that parties to a contract, which provided that its rates "may be approved, ordered or set by any valid law, order, rule or regulation of any . . . regulatory authority . . . having jurisdiction," were bound by a FERC determination, even though they were not directly subject to FERC's jurisdiction); *Holbein v. Austral Oil Co.*, 609 F.2d 206, 208 & n.3 (5th Cir. 1980) (holding that all parties to a gas purchase contract, which was "subject to all present and future . . . lawful orders of all regulatory bodies . . . having jurisdiction[,]" had to follow the mandates of FERC's predecessor–whether they were subject to the agency's jurisdiction or not). As a result, we are not enforcing the FERC order; instead, we are enforcing an agreement, which NPPD freely entered.

In this case at least two sections in the Restated Agreement subject NPPD to regulatory authority. For instance, Article 13.9 of the Restated Agreement provides that it "is subject to the regulation of any regulatory body or governmental agency having jurisdiction thereof."[7] In addition, Article 14.1 of the Restated Agreement makes the entire contract subject to FERC approval. Thus NPPD, when it signed the Restated Agreement, bound itself to any FERC-ordered modification of the Restated Agreement–despite the fact that FERC normally would not be able to order NPPD to do anything.

In this instance, FERC declared Section 2.4 to Schedule F discriminatory. It therefore ordered the MAPP members over which it had jurisdiction to remove the Section and required them to refund any such tariffs retroactively to March 1, 1997. MAPP's board complied, revised the Restated Agreement to be consistent with FERC's order, and ordered that members refund the tariffs retroactively. Thus,

---

[7] NPPD offers an interpretation of Article 13.9 that "regulatory body" means NPPD's board rather than FERC because only its board has authority over it. This construction is strained and ignores that the Article refers to the jurisdiction over the Agreement rather than the parties to it.

FERC's amendment to terms of the agreement modified the obligations of *all* parties to the agreement, including NPPD. Or, in other words, because NPPD is a member of MAPP and a signatory to the Restated Agreement, it too is contractually required to refund the tariffs imposed under Section 2.4–regardless of whether the contract expressly provides for it.[8]

B.

NPPD also argues that as a subdivision of the State of Nebraska, it has a "special status" under the Restated Agreement and thus is not subject to FERC jurisdiction. Notably, NPPD points to Article 13.15 of the Restated Agreement. That Article provides in pertinent part:

> [N]otwithstanding any other provision of this Restated Agreement, no Member shall be required to take any action . . . that (a) it is not permitted by law to undertake or that is prohibited in whole or in part by any law or regulation applicable to such Member, or (b) would require such Member to violate a provision of such law or regulation in order to comply with this Restated Agreement.

NPPD then points to Nebraska Revised Statutes § 70-655, which requires NPPD to establish NPPD's own rates. Thus, concludes NPPD, an order that requires another body to establish a rate for it would violate Nebraska law. This in turn, urges NPPD, would violate Article 13.15 of the Restated Agreement.

However, a contract is to be interpreted so as to give meaning to all of its provisions. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998); *see also Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234

---

[8] As noted previously, every other MAPP member has complied with the FERC refund requirements–including the Omaha Public Power District, which like NPPD is a public corporation and public subdivision of the State of Nebraska.

F.3d 1032, 1042 (8th Cir. 2000) (holding that the law "forbids a party to pick and choose among favorable contract clauses, but rather requires each clause to be read in light of the entire contract"). By solely focusing on a narrow section of Article 13.15, NPPD misses the Restated Agreement's larger purpose, which is to provide nondiscriminatory transmission services in accordance with FERC policies. This plan is found throughout the Restated Agreement, including Articles 13.9 and 14.1. Thus, despite the language of Article 13.15, the Restated Agreement as a whole provides that NPPD and every other signatory to the Restated Agreement are to follow FERC mandates.

Moreover, even if we were to ignore the purpose of the Restated Agreement and only follow the language of Article 13.15, the terms of Article 13.15 require that NPPD seek a waiver from the other provisions of the Restated Agreement. Immediately following the portion that NPPD has highlighted, Article 13.15 provides that "[e]ach Member shall seek such approvals . . . as may be necessary to comply with this Restated Agreement. . . ." However, NPPD has not done this. As a result, NPPD's second argument also fails.

### III.

Thus, for the reasons stated above, we affirm the district court.

_____