# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 14, 2007          Decided July 20, 2007

No. 05-1402

TRANSMISSION AGENCY OF NORTHERN CALIFORNIA, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SOUTHERN CALIFORNIA EDISON COMPANY, ET AL.,
INTERVENORS

Consolidated with
06-1246

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Dennis M.P. Ehling* argued the cause for petitioners. With him on the briefs were *Roger D. Stark*, *Wallace L. Duncan*, *James D. Pembroke*, *Michael Postar*, *Peter J. Scanlon*, *Sean M. Neal*, and *Kristen Connolly McCullough*.

*Wallace F. Tillman*, *Lisa G. Dowden*, *Daniel I. Davidson*, *Robert C. McDiarmid*, *Susan N. Kelly*, *Jonathan D. Schneider*,

*Harvey L. Reiter*, and *Linda M. Nagel* were on the briefs for intervenor and amici curiae in support of petitioner. *Eugene Tillman* entered an appearance.

*Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Stuart K. Gardiner* argued the cause for intervenors in support of respondent. With him on the brief were *Anna J. Valdberg*, *Jennifer L. Key*, *Michael E. Ward*, *Anthony J. Ivancovich*, *Daniel J. Shonkwiler*, *Erik N. Saltmarsh*, and *Jeffrey A. Diamond*. *Victoria S. Kolakowski* entered an appearance.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Petitioners challenge three orders[1] of the Federal Energy Regulatory Commission ("FERC") that require the City of Vernon, California ("Vernon") to issue refunds to the California Independent System Operator Corporation ("CAISO") for overcollection of its transmission revenue requirement ("TRR").[2] Any opinion whose opening

---

[1] *City of Vernon, Cal.*, 111 FERC ¶ 61,092 (2005) (Opinion No. 479); *City of Vernon, Cal.*, 112 FERC ¶ 61,207 (2005) (Opinion No. 479-A); *City of Vernon, Cal.*, 115 FERC ¶ 61,297 (2006) (Opinion No. 479-B).

[2] A TRR "consists of the costs and rate of return to which the utilities are entitled as participating transmission owners." *Pacific Gas & Elec. Co. v. FERC*, 306 F.3d 1112, 1114 (D.C. Cir. 2002). The

sentence includes three acronyms, one footnote that refers to three FERC orders and another that requires a definition of an accounting procedure is likely to be about a matter of some complexity. Fortunately, the legal issue that resolves the controversy before us is not so complex as the dispute itself, and because this case is a continuation of the litigation that resulted in our decision in *Pacific Gas & Electricity Company v. FERC*, 306 F.3d 1112 (D.C. Cir. 2002) ("*PG&E*"), we have some prior familiarity with the events and disputes out of which it arose.

In *PG&E*, we were asked to review a challenge brought by some existing PTOs of CAISO to a FERC order that approved the TRR Vernon filed when it sought to become a PTO as well. We concluded that FERC had failed to demonstrate that CAISO's rates (also referred to as the "transmission access charge" or "TAC") would be just and reasonable if Vernon were to participate under the proposed TRR. On remand, FERC issued three orders directing Vernon to pay refunds to CAISO so as to restore CAISO's just and reasonable rate. Vernon now petitions for review of these orders and asks us to consider whether FERC has authority (1) to review Vernon's TRR under the just and reasonable standard and (2) to order Vernon to refund any overcollection of its TRR.

Joining Vernon are the Transmission Agency of Northern California ("TANC"), the City of Santa Clara, California, the City of Redding, California, and M-S-R Public Power Agency

---

parties in this case use this term, as do we, to refer both to the detailed revenue requirement a utility would submit to CAISO and FERC in order to become a participating transmission owner ("PTO") of CAISO and to the monetary compensation a PTO would collect from CAISO.

(collectively, the "TANC Parties").[3] Together, they argue that because Vernon, as a municipality, is exempted from the Federal Power Act when it provides transmission services, *see E. Ky. Power Coop., Inc. v. FERC*, No. 06-1003, slip op. at 10-11 (D.C. Cir., June 15, 2007) (citing *United States v. Pub. Util. Comm'n of Cal.*, 345 U.S. 295, 315 (1953)), FERC has no authority to order Vernon to pay refunds. For the reasons set forth below, we hold that although FERC has sufficiently demonstrated its authority to review Vernon's TRR under the just and reasonable standard, FERC lacks jurisdiction to order Vernon to pay refunds to CAISO. Accordingly, we vacate the portions of the orders requiring refunds by Vernon and remand for further proceedings.

## I.

The Federal Power Act ("FPA") grants FERC authority "to provide effective federal regulation of the expanding business of transmitting and selling electric power in interstate commerce." *New York v. FERC*, 535 U.S. 1, 6 (2002) (citing *Gulf States Util. Co. v. FPC*, 411 U.S. 747, 758 (1973)). Section 205 of subchapter II under the FPA permits FERC to ensure that "all rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy" subject to its jurisdiction are "just and reasonable." FPA § 205, 16 U.S.C. § 824d(a).

In the past, the monopoly control of vertically-integrated utilities presented a major structural problem in the electricity industry because consumers were forced to pay a single price for "bundled" generation, transmission, and distribution services. *See, e.g.*, *Midwest ISO Transmission Owners v. FERC*, 373 F.3d

---

[3] Of these petitioners, only Vernon has thus far sought to join CAISO.

1361, 1363 (D.C. Cir. 2004) ("*Midwest ISO*"); *Pub. Util. Dist. No. 1 of Snohomish Co. v. FERC*, 272 F.3d 607, 610 (D.C. Cir. 2001) ("*Snohomish*"). In an attempt to correct this problem, FERC implemented several policies to minimize anticompetitive behavior among transmission-owning public utilities. FERC began by requiring "utilities that owned transmission facilities to guarantee all market participants non-discriminatory access to those facilities," *Midwest ISO*, 373 F.3d at 1363 (citing *Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities*, 61 Fed. Reg. 21,540, 21,550-52 (1996) ("Order No. 888")). Next, FERC encouraged, but did not require, the development of umbrella entities called independent system operators ("ISOs") and regional transmission organizations ("RTOs"). *See id.* at 1364. FERC encouraged public utilities to participate in these organizations, which would manage the transmission facilities of each of its members and return to them the revenues set forth in the TRRs. By assuming operational control but not ownership of the transmission facilities, ISOs (which manage RTOs) would separate "operation of the transmission grid and access to it from economic interests in generation[,]" Order No. 888, 61 Fed. Reg. at 21,551, and promote efficiency by taking advantage of economies of scale in segmentation and control of facilities, *see Midwest ISO*, 373 F.3d at 1364. Finally, FERC encouraged "all transmission-owning entities in the Nation, including *non-public entities* [*e.g.*, governmental entities],"[4]

---

[4] The term "non-public entity," or its equivalent "non-public utility," can be confusing even to the careful reader. The FPA defines a "public utility" as "any person who owns or operates facilities subject to the jurisdiction of [FERC.]" FPA § 201(e), 16 U.S.C. § 824(e). FERC refers to utilities wholly-owned by governmental entities as "non-public utilities" or "non-public entities" because governmental entities are exempt from the FPA and therefore exempt from FERC's jurisdiction when they provide transmission services.

*Regional Transmission Organizations*, Order No. 2000, 65 Fed. Reg. 810, 811 (1996) (emphasis added); *see also* Order No. 888, 61 Fed. Reg. at 31,780-81, to voluntarily place their transmission facilities under the control of RTOs, *see* Order No. 2000, 54 Fed. Reg. at 811, some of which would be managed in turn by ISOs, *id.*; *see also* Order No. 888, 61 Fed. Reg. at 21,595-96.

This last step created a complication from which this case arises. Because governmental entities are exempt from the FPA, *see* FPA § 201(f), 16 U.S.C. § 824(f), FERC cannot regulate them even when they join regulated ISOs. *See PG&E*, 306 F.3d at 1114. It is settled, however, that "FERC may analyze and consider the rates of non-jurisdictional utilities to the extent that those rates affect jurisdictional transactions." *Id.* (citations omitted). In other words, FERC may consider the rates of a municipal utility PTO to the extent that they affect the rates of the ISO, which is subject to the FPA.

Established in 1997 by the State of California, CAISO is an ISO subject to the FPA. Initially, it had three PTOs, each subject to FERC's jurisdiction—Pacific Gas & Electric Company, Southern California Edison Company, and San Diego Gas & Electric Company. Under § 205, FERC had authority to examine these PTOs' TRRs to ensure that they were just and reasonable. On March 31, 2000, CAISO proposed to amend its tariff to allow non-jurisdictional utilities, including governmental entities, to become PTOs. *See Cal. Indep. Sys. Operator Corp.*, 91 FERC ¶ 61,205, 61,720 (2000). Although the aim of the proposal was consistent with FERC's effort to encourage non-jurisdictional entities to become PTOs, FERC nonetheless determined that this particular proposal was at odds with FERC's regulatory responsibility because it barred any FERC review of the TRRs of non-jurisdictional entities. *See id.* at 61,724. Careful to disavow any intention "to broaden the

applicability of Section 205 to non-public utilities," *id*. (internal quotation and citation omitted), FERC accepted a revised CAISO proposal only when it required non-jurisdictional PTOs to submit their TRRs to either an ISO panel subject to FERC review or directly to FERC. *See Cal. Indep. Sys. Operator Corp.*, 93 FERC ¶ 61,104, 61,287-89 (2000).

On August 30, 2000, Vernon, seeking to become a PTO of CAISO, filed its TRR. *See City of Vernon, Cal.*, 93 FERC ¶ 61,103, 61,283 (2000). FERC accepted Vernon's proposal subject to certain modifications (of no significance here), *see Cal. Indep. Sys. Operator*, 94 FERC ¶ 61,148 (2001), which Vernon made. *See City of Vernon, Cal.*, 94 FERC ¶ 61,344 (2001). Two of CAISO's PTOs appealed FERC's decision to accept Vernon's proposal on the ground that Vernon's TRR did not meet § 205's "just and reasonable" standard and that FERC had failed to adequately consider how Vernon's participation and its TRR would affect CAISO's overall rates. *See PG&E*, 306 F.3d at 1114.

It should not be surprising that these PTOs were troubled by FERC's approval of Vernon's TRR. Because CAISO's rates are based on the TRRs of each of the PTOs, a Vernon TRR that is not just and reasonable could frustrate FERC's effort to ensure that CAISO's rates are. Observing this, in *PG&E* we held that "FERC never clarified or developed either the approach or the standard that it applied" to review Vernon's TRR, *id.* at 1118, and remanded the case "so that FERC can articulate with clarity what approach and standard are governing its review and how both ensure CAISO's rates are just and reasonable under § 205," *id.* at 1119.

On remand, FERC held a hearing and collected comments from interested parties, including Vernon, the TANC Parties, and the other PTOs of CAISO. In the Initial Decision, the

Administrative Law Judge ("ALJ") "concluded that Vernon's TRR should be subject to a *Section 205 like* review, in order to ensure that its inclusion in the [CAISO rate] results in just and reasonable [CAISO] rates." *City of Vernon, Cal.*, 109 FERC ¶ 63,057, 65,131 (2004) (emphasis added). Reflecting the tension between Vernon's exemption from the FPA and FERC's duty to ensure that CAISO's rates are just and reasonable, the ALJ left the standard of review vague, providing only that "each element of Vernon's TRR must be closely scrutinized using a method *approximating* a Section 205 review." *Id.* at 65,135 (emphasis added). The ALJ made no determination whether FERC has authority to order a non-jurisdictional entity to pay refunds to an ISO, because it believed that Vernon's overcollection could eventually "be netted out in the ISO's balancing account." *Id.* at 65,141 n.41.

In Opinion No. 479, FERC affirmed much of the ALJ's Initial Decision but clarified that Vernon's TRR should be reviewed under § 205's "just and reasonable" standard. 111 FERC ¶ 61,092, 61,428 (2005). "Vernon having voluntarily made its TRR part of a jurisdictional rate, the TRR is subject to our § 205 jurisdiction and both can and must be reviewed thereunder." *Id.* at 61,429. Vernon sought a rehearing of Opinion No. 479 on the ground, *inter alia*, that FERC overstepped its authority in subjecting Vernon to a full-scale § 205 review.

In Opinion No. 479-A, FERC denied rehearing of Opinion No. 479 and emphasized that it read *PG&E* as "fully endorsing" FERC's § 205 review of Vernon's TRR. 112 FERC ¶ 61,207, 2005 WL 2030491, at *5 (2005). Throughout the *PG&E* remand litigation, Vernon had argued that FERC was without authority to order Vernon to pay refunds, *see, e.g.*, *id.* at *15, but FERC only finally addressed this question in Opinion No. 479-A. FERC determined that the refund issue was governed by

section 16.2 of CAISO's Transmission Control Agreement with Vernon ("Agreement"), which obligated Vernon to pay refunds for any overcollection it received from CAISO.[5] *See id.* at *17. FERC concluded that "the ISO had proposed section 16.2 specifically to remedy the situation in which a 'non-jurisdictional Participating Transmission Owner, such as Vernon, will not be obligated to adjust rates or make refunds in accordance with the ISO Tariff,'" *id.* at *16 (citation omitted), and accordingly directed Vernon to pay refunds to CAISO, *id.* at *16-18. In response to Vernon's argument that the disputed order constituted an unlawful exercise of jurisdiction over Vernon's non-jurisdictional activity (*i.e.*, the ratemaking activity of a governmental entity), FERC viewed the order as an appropriate exercise of its "jurisdiction over the ISO's TAC rate, of which Vernon's TRR is a component." *Id.* at *5. Vernon

---

[5] Section 16.2 provides:

Each Participating [Transmission Owner] *whether or not it is subject to the rate jurisdiction of FERC under section 205 and section 206 of the Federal Power Act shall make all refunds*, adjustments to its Transmission Revenue Requirement, and adjustments to its [Transmission Owner] Tariff, and do all other things required of a Participating [Transmission Owner] to implement any FERC order related to the ISO Tariff, including any FERC order that requires the ISO to make payment adjustments or pay refunds to, or receive prior period overpayments from, any Participating [Transmission Owner]. All such refunds and adjustments shall be made, and all other actions taken, in accordance with the ISO Tariff, unless the applicable FERC order requires otherwise.

Opinion No. 479-A, 2005 WL 2030491, at *16 (citing Ex. S-3 in Docket No. ER00-2019 *et al.*) (emphasis added).

sought a rehearing of Opinion No. 479-A, requesting a determination that FERC had no authority to require a municipal utility to pay refunds. The TANC Parties, who, as governmental entities, would be affected by FERC's conclusions in Opinions No. 479 and No. 479-A, sought review of the two orders in this Court.

In Opinion No. 479-B, FERC denied rehearing of Opinion No. 479-A, *see* 115 FERC ¶ 61,297, 62,059 (2006), and held that the Agreement, which had been accepted by FERC, provided a basis for FERC's authority to order compliance with its refund terms. Because Vernon "bound itself contractually," FERC concluded that it could properly hold Vernon to its commitment despite Vernon's status as a municipal utility exempt from FPA regulation. *Id.* at 62,064. Vernon's timely petition for review followed, and Vernon's petition was consolidated with the TANC Parties' petition for review of Opinions No. 479 and No. 479-A.

## II.

We begin by determining whether we have jurisdiction to review petitioners' claims. Section 313(b) of the FPA provides that a party seeking judicial review of a FERC order must be "aggrieved" by that order. FPA § 313(b), 16 U.S.C. § 825*l*(b). "A party is aggrieved within the meaning of § 313(b) if it can establish both the constitutional and prudential requirements for standing." *Snohomish*, 272 F.3d at 613. To establish constitutional standing, petitioners must show three elements: (1) injury in fact, (2) causation, and (3) redressability. *See, e.g.*, *GrassRoots Recycling Network, Inc. v. EPA*, 429 F.3d 1109, 1111-12 (D.C. Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish prudential standing, petitioners must show that "the interest sought to be protected by the complainant is arguably within the zone of interests to be

protected or regulated by the statute." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

We have no trouble finding jurisdiction to review claims initially raised by Vernon under administrative review by FERC. Vernon has constitutional standing. It has been injured in fact because it was ordered to make payments out of its treasury, the injury was caused by FERC's orders, and this Court can redress Vernon's injury if FERC's order is contrary to law. Vernon also has prudential standing. Because Vernon sought to become a PTO of CAISO, its relationship with CAISO falls within the zone of interests protected by the FPA.

Were the consolidated petition before us to include only arguments previously raised by Vernon in its administrative hearing, we would not need to resolve whether the TANC Parties also have standing. *See, e.g.*, *Ry. Labor Executives' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993) ("[I]f one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." (citing *Doe v. Bolton*, 410 U.S. 179, 189 (1973))). But the petition raises an additional argument not previously raised by Vernon—namely, that FERC should apply a "comparability standard" to review Vernon's TRR. *See* Petitioners' Br. at 37. Because Vernon cannot raise this argument for the first time before us, *see Entergy Srvs., Inc. v. FERC*, 391 F.3d 1240, 1247 (D.C. Cir. 2004) ("Parties seeking review of FERC orders must petition for rehearing of those orders and must *themselves* raise in that petition *all* of the objections urged on appeal." (quoting *Platte River Whooping Crane v. FERC*, 875 F.2d 109, 113 (D.C. Cir. 1989)) (emphasis in original)), we must determine whether TANC, alone among the TANC Parties to have raised this argument at the administrative hearing, *see* Opinion No. 479-A, 111 FERC at 61,427, has standing.

For TANC to have standing, its injury-in-fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted). The TANC Parties argue that they each have standing "because they are governmental entities . . . and FERC's orders are an important factor in determining *whether ever becoming a PTO is advisable for these entities*." Petitioners' Br. at 20 (emphasis added). But none of the TANC Parties has yet sought to participate in CAISO, nor has any developed revenue requirements for such participation, or submitted them to be reviewed by FERC, or been ordered by FERC to pay refunds. Even if the resolution of Vernon's petition could affect the TANC Parties' decision to join CAISO, at the end of the day, participation in CAISO is not compulsory, but is voluntary. Because their alleged injury is speculative at best, the TANC Parties lack constitutional standing and therefore none of them may bring this petition. Vernon alone has standing to challenge these orders, and accordingly, we address only the arguments raised by Vernon at the administrative proceedings.

## III.

We first consider whether FERC, in its effort to ensure that CAISO's rates are just and reasonable under § 205, may review Vernon's TRR under the same just and reasonable standard. We begin by determining the appropriate standard of review for our analysis of this question.

In general, "[w]e set aside a decision of the FERC only if it is arbitrary and capricious or otherwise contrary to law." *Envtl. Action, Inc. v. FERC*, 939 F.2d 1057, 1061 (D.C. Cir. 1991) (citation omitted); *see also* Administrative Procedure Act, 5 U.S.C. § 706(2). "In making this determination, '[we] must consider whether the decision was based on a consideration of

the relevant factors and whether there has been a clear error of judgment . . . . [We are] not empowered to substitute [our] judgment for that of the agency.'" *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002) (citations and internal quotation marks omitted). "[W]here an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir.1995).

Petitioners argue that because Vernon is exempt from FPA jurisdiction, FERC's § 205 review of its TRR is beyond the scope of FERC's statutory authority. But once Vernon becomes a PTO, its TRR becomes a component of the rate design under which CAISO operates. And as we acknowledged in *PG&E*, "FERC may analyze and consider the rates of non-jurisdictional utilities to the extent that those rates affect jurisdictional transactions." *PG&E*, 306 F.3d at 1114 (citations omitted). The new question for us involves the appropriate standard under which FERC should review the rates of non-jurisdictional utilities like Vernon when those rates affect jurisdictional transactions. When FERC considered this question in Opinion No. 479, it found itself constrained by several competing factors: (i) its lack of statutory authority to regulate Vernon; (ii) its duty to ensure that CAISO's rates are just and reasonable; (iii) the mandate of this Court in *PG&E* that FERC adequately explain how Vernon's participation in CAISO can ensure that CAISO's rates will remain just and reasonable; and (iv) the economic reality that CAISO's rates are affected by the rate designs of each PTO. *See* Opinion No. 479, 111 FERC at 61,428. FERC held a hearing, received comments, and considered briefs filed by numerous interested parties, including jurisdictional PTOs and non-jurisdictional entities seeking to become PTOs. FERC considered alternative standards of review, including the "substantial evidence" standard suggested

by Vernon,[6] *see* Opinion No. 479, 111 FERC at 61,427, the "comparability standard" suggested by TANC,[7] *see id.*; Opinion No. 479-A, 2005 WL 2030491, at *8 (rejecting the comparability standard because it applies only to non-jurisdictional rates), and the "section 205-like" standard suggested by the ALJ, *see* Opinion No. 479, 111 FERC at 61,429. Ultimately, however, FERC rejected these limited standards and concluded that Vernon's TRR would be subject to § 205's "just and reasonable" standard. Because "Vernon has no obligation to CAISO ratepayers who will foot the bill for the TRR," *id.*, FERC reasoned, unless FERC reviews the individual components of Vernon's TRR under the "just and reasonable" standard, "Vernon has every incentive to increase its TRR at the expense of non-Vernon CAISO ratepayers, as their subsidy grows with the TRR and inures to Vernon's benefit," *id.* FERC

---

[6] Vernon proposed the following standard:

The proper standard of review for [FERC] to apply to Vernon's TRR, or any nonjurisdictional [Participating Transmission Owner's] TRR, is (1) whether the Vernon City Council's determinations were arbitrary and capricious and not based upon substantial evidence, and (2) whether substantial evidence in fact demonstrates that the ISO's rates will be just and reasonable after the inclusion of Vernon's TRR.

Opinion No. 479, 111 FERC at 61,427 (citing Vernon's Brief on Exceptions at 13).

[7] Under this standard, "'[a]n open access tariff that is not unduly discriminatory or anticompetitive should offer third parties access on the same or comparable basis, and under the same or comparable terms and conditions, as the transmission provider's uses of its [own] system.'" *Alliant Energy Corp. v. FERC*, 253 F.3d 748, 751 n.3 (D.C. Cir. 2001) (quoting *Transmission Pricing Policy Statement*, 59 Fed. Reg. 55,031, 55,034 (1994)).

thus concluded, "the *only* way to ensure that CAISO's rate is just and reasonable is for FERC to examine each component of Vernon's TRR under the full review." *Id.* at 61,428 (emphasis in original). We find that FERC was neither arbitrary nor capricious in its decision. FERC properly considered the relevant factors, provided an adequate and reasoned explanation for its holding, and committed no clear error.

Petitioners' arguments to the contrary are unavailing. First, petitioners argue that because the *PG&E* Court directed FERC to ensure that CAISO's rates (not Vernon's TRR) were just and reasonable, FERC should have subjected only CAISO's rates to the just and reasonable standard. But FERC has sufficiently demonstrated that it is impossible to ensure that CAISO's rates are just and reasonable without reviewing Vernon's TRR under the same standard. *See* Opinion No. 479, 111 FERC at 61,428. Nothing in *PG&E* prohibits FERC from reviewing Vernon's TRR under the just and reasonable standard, and it is not within our discretion to second-guess FERC's determination after such a meticulous process and analysis. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.").

Second, petitioners argue that FERC ignored its own precedent, in which it has previously held that FERC "cannot review [a non-jurisdictional transmission owner's] rates under the Section 205 just and reasonable standard . . . ." Petitioners' Br. at 14 n.34 (quoting *Cal. Indep. Sys. Operator Corp.*, 91 FERC ¶ 61,205, 61,724 (2000)). As we have previously noted, "where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." *ANR Pipeline Co.*, 71 F.3d at 901. In Opinion No. 479-A, FERC explained its departure by reasoning that it

read *PG&E* as "fully endorsing" FERC's § 205 review of Vernon's TRR. 2005 WL 2030491, at \*5. Petitioners are therefore correct that FERC has not in the past reviewed a non-jurisdictional entity's TRR under § 205's just and reasonable standard—indeed, before *PG&E*, FERC accepted Vernon's TRR without reviewing it under this standard. But in light of our discussion and holding in *PG&E,* where we specifically instructed FERC to "ensure that CAISO's rates meet the just and reasonable standard of § 205," 306 F.3d at 1121, we find FERC's departure from precedent justified and in compliance with our instructions. Under the circumstances, FERC was neither arbitrary nor capricious in subjecting Vernon's TRR to the just and reasonable standard.[8]

---

[8] In a related argument, Vernon specifically faults FERC for not applying the "prudence" standard to judge the "pass-through" costs of Vernon's TRR. In *PG&E*, we held that it was "unclear under what standard FERC reviewed Vernon's TRR to ensure that a pass through of its costs by the CAISO would be just and reasonable." 306 F.3d at 1117. We also noted that although "[in] its brief, FERC recognizes that it generally judges pass-through costs using this prudence test . . . , this prudence standard is nowhere to be found in the Orders at issue." *Id.* The *PG&E* Court did not, however, require FERC to apply the prudence standard on remand—nor do we think it is appropriate in this case. The prudence standard

> requires a complainant alleging that some aspect of a utility's rate or practice is unjust or unreasonable to present evidence sufficient to raise serious doubt that a reasonable utility manager, under the same circumstances and acting in good faith, would not have made the same decision and incurred the same costs. If the petitioner clears this initial hurdle, the utility has the burden of presenting evidence sufficient to dispel those doubts. If it cannot, the complainant wins.

*Ind. Mun. Power Agency v. FERC*, 56 F.3d 247, 253 (D.C. Cir. 1995)

**IV.**

Petitioners next argue that FERC, even if it may review Vernon's TRR, lacks authority to order Vernon to pay refunds. On this point, we agree with petitioners because the structure of the FPA clearly reflects Congress's intent to exempt governmental entities from FERC's refund authority. Again, we begin our analysis with our standard of review.

Because "FERC is a 'creature of statute,' and the agency has 'only those authorities conferred upon it by Congress,'" *Nat'l Ass'n of Regulatory Util. Comm'n*, 475 F.3d 1277, 1286 (D.C. Cir. 2007) ("*NARUC*"), FERC exceeds its jurisdiction under the APA if it regulates an entity that Congress has explicitly exempted from the statute, *see, e.g.*, *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (stating that in the absence of statutory authorization for its act, an agency's "action is plainly contrary to law and cannot stand" (citations omitted)); *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 3 (D.C. Cir. 2002). In determining whether FERC has acted beyond its jurisdiction, we grant FERC *Chevron* deference. *See NARUC*, 475 F.3d at 1279 ("FERC's interpretations of the jurisdictional provisions of the Federal Power Act . . . enjoy *Chevron* deference." (citation omitted)). We therefore review petitioners' jurisdictional challenge to FERC's orders by applying the two-step analysis of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under this analysis, we first determine "whether Congress has directly spoken to the precise question

---

(citations omitted). As such, the standard provides a mechanism by which a complainant can challenge a utility's rate under the just and reasonable standard; it is an *evidentiary* tool designed to facilitate a rate challenge. Once FERC reviews Vernon's TRR under the just and reasonable standard, however, it is no longer necessary for FERC to consider this standard.

at issue." *Id.* at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," *id.* at 842-43; *see also Am. Library Ass'n v. FCC*, 406 F.3d 689, 699 (D.C. Cir. 2005) (an "agency's interpretation of [a] statute is not entitled to deference absent a *delegation of authority* from Congress to regulate in the areas at issue" (emphasis in original) (citation omitted)). "[I]f the statute is silent or ambiguous with respect to the specific issue," *Chevron*, 467 U.S. at 843, we proceed on to the second step, in which we ask "whether the agency's answer is based on a permissible construction of the statute," *id.*, and we uphold the agency's interpretation as long as it is reasonable. *See Village of Bergen v. FERC*, 33 F.3d 1385, 1389 (D.C. Cir. 1994).

In this case, we need go no further than step one of *Chevron* to hold that FERC acted contrary to law when it ordered Vernon to pay refunds to CAISO. Section 201(f) of the FPA unequivocally exempts from subchapter II "any political subdivision of a State . . . unless [included by] specific reference . . . ." FPA § 201(f), 16 U.S.C. § 824(f). The implication of this exemption is clear: subsections of subchapter II do not apply to governmental entities (including municipalities) unless a provision expressly provides FERC with such authority. We find it significant that Congress has in fact authorized FERC with limited refund authority in subchapter II in order to ensure that its jurisdictional entities maintain just and reasonable rates. Section 206(b) gives FERC authority to order "[a] public utility to make refunds of any amounts paid . . . in excess of those which would have been paid under the just and reasonable rate." FPA § 206(b), 16 U.S.C. 824e(b). This subsection, however, does not apply to Vernon because a municipality is not a public utility. *See, e.g.*, *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 916-17 (9th Cir. 2005) ("*BPA*") (demonstrating the difference between municipalities and public

utilities under the FPA). Congress has therefore specifically exempted governmental entities from subchapter II of the FPA and has only provided FERC with refund authority over public utilities without making any reference to governmental entities. The intent of Congress is clear from the plain language of the statute: FERC has no authority to order Vernon to pay refunds to CAISO.

FERC's alternative interpretation is impermissible. It argues that "the agency here is legitimately employing its section 205 authority to assure that a jurisdictional rate of a jurisdictional utility . . . is just and reasonable." Respondent's Br. at 36. But because nothing in the language of § 205 contravenes § 201(f)'s specific exemption of municipalities, the plain language of Congress remains dispositive on this point. A recent and similar case from the Ninth Circuit reflects this conclusion. In *BPA*, the Ninth Circuit reviewed FERC orders requiring both public and non-public utilities to make refunds to California ratepayers for excess charges these utilities collected in some spot market transactions. The central issue was "whether FERC's authority to order refunds is based on the *identities of the sellers* subject to the refund order, *i.e.*, public versus non-public utilities, or on the *nature of the transactions*, *i.e.*, FERC's broad regulatory authority over the sale of electric energy for resale in interstate commerce." *Id.* at 911 (emphases added). Relying on the "clear and unambiguous" text of § 201(f) of the FPA, *id.*, and refusing "to second guess Congress's judgment as to the breadth of FERC's refund authority" as provided by § 206(b), *id.*, the Court held that FERC's authority is based on the identities of the sellers, rather than the nature of the transactions. *See id.* at 916. The Court thus "conclude[d] that FERC does not have refund authority over wholesale electric energy sales made by governmental entities and non-public utilities." *Id.* at 911. The Court noted that "FERC's long-standing interpretation of §§ 205 and 206

confirms that governmental entities/non-public utilities lie outside its rate-making and refund authority," *id.* at 921, and held that "FERC cannot expand its statutory authority to reach governmental entities/non-public utilities through § 206(b) simply because such entities voluntarily participated in markets approved by FERC that involved FERC-jurisdictional wholesale sales of electric energy in interstate commerce." *Id.* at 924. We agree with the *BPA* Court that FERC's refund authority under the FPA is ultimately determined by the "identities of the sellers subject to the refund order," 422 F.3d at 911, and see no meaningful distinction between *BPA* and the case before us.[9]

---

[9] In support of FERC's refund authority under § 205, intervenors cite *NARUC* and *United Distribution Companies v. FERC*, 88 F.3d 1105 (D.C. Cir. 1996) ("*UDC*") to argue that non-jurisdictional entities must comply with FERC's regulation of jurisdictional transactions. *See* Joint Br. of Intervenors in Support of Respondent at 24-25. In *NARUC*, we held that FERC may require all electrical transmission facilities—jurisdictional and non-jurisdictional—to adopt a standard agreement for interconnecting with generators, because FERC has jurisdiction over interstate transmissions and wholesale sales. *See* 475 F.3d at 1279-81. Similarly, in *UDC*, we held that when municipally-owned local gas distribution companies (non-jurisdictional entities under the Natural Gas Act) participate in transportation provided by interstate pipelines (services over which FERC has jurisdiction) they must comply with FERC rules governing these services. *See* 88 F.3d at 1153-54. In both cases, however, FERC's jurisdiction extended to non-jurisdictional entities only insofar as FERC had authority to dictate the terms of their participation in jurisdictional services or transactions. By analogy, FERC, in complying with its duty to ensure that CAISO's rates are just and reasonable, may justifiably subject Vernon's TRR to a § 205 review before approving Vernon's participation in CAISO. This authority does not, however, extend to FERC ordering Vernon to pay refunds for any surplus revenue Vernon may have collected under the TRR. Neither *NARUC* nor *UDC* can be read as supporting such broad regulatory authority.

FERC's reliance on the Agreement between CAISO and Vernon is misplaced. In Order No. 479-A, FERC reasonably read the Agreement as obligating Vernon to "make all refunds . . . required of a [PTO] to implement any FERC order related to the ISO Tariff." 2005 WL 2030491, at \*16. FERC concluded that "[i]t is difficult to read [Section 16.2 of the Agreement] as anything but an explicit agreement by a non-jurisdictional [PTO] to make refunds arising from any [FERC] order to the ISO, from which they would otherwise be immune by statute." *Id.* But even if FERC's interpretation of the Agreement were correct, FERC has cited no persuasive authority to support its claim that the Agreement therefore provides FERC with authority to order Vernon to issue refunds to CAISO where Congress has not granted such authority.

We find FERC's reference to *Alliant Energy v. Nebraska Public Power District*, 347 F.3d 1046 (8th Cir. 2003) unproductive. In *Alliant Energy*, the Nebraska Public Power District ("NPPD"), a non-jurisdictional governmental utility, signed a usage agreement with the members of the Mid-Continent Area Power Pool ("MAPP"), a voluntary association of energy companies. A section of the agreement allowed MAPP members (a group that now included NPPD) to collect tariffs for non-MAPP members' use of their system. *See id.* at 1049. FERC issued an order requiring the MAPP to remove this section and retroactively ordered the MAPP members to refund the tariffs. *See id.* When the NPPD refused to comply with FERC's modification of the agreement on the ground that FERC had no jurisdiction over the NPPD, the *remaining MAPP members* sued the NPPD. The Eighth Circuit held that because the enabling agreement provided that its terms are subject to regulatory authorities, *see id.* at 1050, the NPPD bound itself to any modification of the agreement ordered by FERC, and therefore, was contractually required to refund appropriate charges pursuant to FERC's order, *see id.* But *Alliant Energy*

involved a *judicial* order of refunds, and not an agency order. FERC had not ordered the NPPD to pay a refund, but stated only that the NPPD was contractually required to do so.[10] *See id.* at 1050-51. The Eighth Circuit clearly held that "we are not enforcing the FERC order; instead, we are enforcing an agreement, which NPPD freely entered." *Id.*

FERC's alternative theory—that it has authority to enforce the Agreement because it was filed by CAISO, a jurisdictional entity, and approved by FERC—still cannot overcome the plain language of Congress. We have previously held that "as a statutory entity, [FERC] cannot acquire jurisdiction merely by agreement of the parties before it." *Columbia Gas Transmission Corp. v. FERC*, 404 F.3d 459, 463 (D.C. Cir. 2005) (quoting *Am. Mail Line Ltd. v. FMC*, 503 F.2d 157, 170 (D.C. Cir. 1974)) (quotation marks omitted). Though FERC argues that "the FPA obviously contemplates non-jurisdictional parties entering into and being bound by jurisdictional contracts, and further contemplates that FERC should enforce these contracts," Respondent's Br. at 39, it fails to explain how the FPA, which by its express terms exempts governmental entities from FERC's refund authority, can simultaneously be read to support FERC's refund authority over a governmental entity (*i.e.*, Vernon, a municipality).

In conclusion, while we find FERC's review of Vernon's TRR to have been based on a consideration of the relevant

---

[10] In fact, FERC had previously defined the scope of its refund order narrowly as to exclude any jurisdiction over the NPPD. *See Mid-West Continent*, 89 FERC ¶ 61,135, 61,387 (1999) ("We note that Nebraska District, as a utility owned and operated by the State of Nebraska, is not a public utility under the FPA. Therefore, we cannot assert jurisdiction over Nebraska District and the requirements in our [refund] order apply only to the public utility members of MAPP[.]").

factors and, therefore, neither arbitrary nor capricious, we cannot reconcile the clear and unambiguous language of § 201(f) with FERC's refund order. Accordingly, we vacate the portions of FERC's orders directing Vernon to refund CAISO.[11]

## V.

For the foregoing reasons, we grant the petition for review and remand the case for further proceedings.

*So ordered.*

---

[11] Although Vernon also argues that FERC's orders violate the Tenth Amendment because those orders "supplant the authorized rate-making decisions of the Vernon City Council" and "command that Vernon make improper payments out of its treasury," Petitioners' Br. at 39, we need not address this argument because we grant the petition for review on statutory grounds. *See, e.g.*, *Am. Dental Ass'n v. Shalala*, 3 F.3d 445, 448 (D.C. Cir. 1993) (declining to reach appellant's alternative arguments once the issue was decided in its favor).